**UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**FIRST JERSEY SECURITIES, INC., and Robert Brennan, Defendants,**

**Havard Lee, Intervenor–Appellant.**

**No. 866, Docket 88–6012.**

United States Court of Appeals, Second Circuit.

Argued Feb. 25, 1988.

Decided March 24, 1988.

Edward M. Spiro, New York City (Peter J. Driscoll, Nora E. Plesent, Kostelanetz Ritholz Tigue & Fink, New York City, of counsel), for intervenor-appellant.

Rosalind C. Cohen, Asst. Gen. Counsel, S.E.C., Washington, D.C. (Daniel L. Goelzer, Gen. Counsel, Jacob H. Stillman, Asst. Gen. Counsel, Daniel F. Wake, Paul Gonson, of counsel), for plaintiff-appellee.

Before FEINBERG, Chief Judge, PRATT, Circuit Judge, and DORSEY, United States District Judge for the District of Connecticut, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

In what has become a recurring problem in this circuit, we are faced on this appeal with the issue of when an individual, acting in his capacity as an agent of a corporation, may claim a fifth amendment privilege against producing corporate documents pursuant to court order. Here, intervenor-appellant Havard Lee challenges an order of the district court holding him in contempt for refusing to produce certain corporate documents alleged to be in his possession. Because we find that the testimonial effect of Lee's production of the documents in question would be negligible, we conclude that he has no legitimate claim to

the "act of production" privilege, and we affirm the order of contempt entered by the district court.

## BACKGROUND

This action arose in connection with a civil proceeding filed by the Securities and Exchange Commission ("SEC") against First Jersey Securities, Inc. ("First Jersey") and Robert E. Brennan, its chief executive officer. The SEC alleges that in First Jersey's underwriting and brokerage activities, it captured profits through excessive markups and markdowns charged to customers, caused some branch offices to advise customers to sell securities, even as other branch offices were recommending that customers buy the very same securities, and caused the purchasers of securities as to which First Jersey made a market to be given a "profit", in an amount determined solely by First Jersey, so that the same securities could then be sold to other First Jersey customers at inflated prices.

On September 24, 1986, the SEC submitted to First Jersey its Third Request for Production of Documents pursuant to Fed. R.Civ.P. 34. It sought production of certain documents, including (1) customer handbooks, reflecting trades in customer accounts; (2) customer inventory sheets, listing customer holdings in securities; (3) records of salesmen's commissions; (4) evidence of communications between branches and the First Jersey home office in New York; (5) daily price quotations of certain over-the-counter securities not listed on NASDAQ; (6) buy/sell recommendations; and (7) records of meetings held at branch offices.

On October 6, 1986, a subpoena duces tecum directed to Lee, then the branch manager of First Jersey's St. Louis office, was issued by the United States District Court for the Eastern District of Missouri. The subpoena directed that Lee appear at the United States attorney's office on November 24, 1986, and commanded him to produce substantially the same documents as those listed in the third request. In a letter dated November 19, 1986, Lee, through counsel, advised the SEC that he would not comply with the subpoena due to his assertion of the fifth amendment privilege against self-incrimination.

At a conference before Judge Owen on October 6, 1987, attorneys for First Jersey contended that a hearing was necessary, as certain branch managers had raised a claim of privilege and would contest compelled production of certain of the requested documents. In response, SEC counsel argued that the documents were corporate records, and would show that the managers, following First Jersey instructions, implemented the practices alleged in the complaint. Judge Owen ordered that First Jersey comply with the third request on or before December 7, 1987.

In order to assert his claim of privilege, Lee filed motions to intervene and for a protective order pursuant to Fed.R.Civ.P. 24 and 26. Lee was the only one of the branch managers to intervene. In an order dated December 7, 1987, Judge Owen granted Lee's motion to intervene, but denied the motion for a protective order. Furthermore, the court made findings that the documents sought by the third request directed at First Jersey and by the subpoena directed to Lee, the latter of which the SEC had never sought to enforce, are corporate records, prepared in the regular course of business, and that the production of such documents by any person possessing or controlling them would not constitute testimonial self-incrimination. The court further ordered Lee to produce the documents to the SEC forthwith, pursuant both to the subpoena and the third request.

Upon Lee's failure to comply with the court order, the SEC moved for an order adjudging him in civil contempt. Following a hearing on the motion on January 4, 1988, Judge Owen found that Lee had actual notice of the court's orders of November 6 and December 7, 1987, and that he had violated those orders by failing to produce the requested documents. Pursuant to these findings, the court held Lee in civil contempt and directed that he be fined $1,000 per day until he complies fully with the court's order. This expedited appeal

followed. Contempt sanctions have been stayed pending our decision.

## DISCUSSION

■ We begin with basic principles in this area. As a corporate entity, First Jersey has no fifth amendment privilege against self-incrimination. *See In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981, 984 (2d Cir.1983) (*"Saxon"*). Thus, if the individual corporate agent having control of corporate documents the corporation is ordered to produce has a claim of privilege from the act of producing those documents, *see generally United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed. 2d 552 (1984), the corporation must see to it that another individual, who would not similarly be incriminated by the act of production, produces the documents. *See In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir.1985) (*"Two Grand Jury Subpoenae"*). Thus, the narrow question with which we are faced is whether Lee personally may be compelled to produce the subpoenaed records, or instead whether First Jersey should have been compelled to name another corporate agent to produce them. There is no question, therefore, whether the documents themselves must be produced, but only whether Lee can be held in contempt for refusing to produce them.

■ As to the underlying SEC investigation into transactions at First Jersey, we agree with the district court that Lee's act of producing the documents would "add[ ] little or nothing to the sum total of the Government's information", *Fisher v. United States*, 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976), and therefore that no privilege exists. The existence of the documents and their authenticity, as well as Lee's possession of them, may be taken to be a "foregone conclusion." As the Supreme Court said in *Fisher*, in such circumstances, " 'no constitutional rights are touched. The question is not of testimony but of surrender.' " *Id.* at 411, 96 S.Ct. at 1581, *quoting In re Harris*, 221 U.S. 274, 279, 31 S.Ct. 557, 558, 55 L.Ed. 73 (1911).

There are two major facts supporting the conclusion that any testimonial effect from Lee's act of production would be minimal. First, two other branch managers have now produced the parallel documents relating to their offices and generated in the normal course of business. This strongly supports Judge Owen's conclusions that the documents exist, and that they are under the control of the branch managers. As he put it, "[E]verybody knew that they existed, everybody knew these were kept by the managers." Transcript of Record of Proceedings of January 4, 1988, at 24, Jt.App. at 247.

First Jersey has conceded, in the affidavit of W. Hunt Dumont, its vice-president and general counsel, that "[t]he categories of documents requested by the SEC * * * encompass documents which exist at the First Jersey branch offices within the custody and control of the First Jersey branch managers." Since this statement fully is consistent with the production of the documents by other branch managers, the district court's conclusion that the existence and possession by Lee of the documents are foregone conclusions amply is supported by the record. The testimonial impact of producing the documents would therefore be negligible, and would serve only to confirm what already is known.

Nor would the act of production serve to authenticate the records for use by the government against Lee. While production would attest to Lee's belief that the documents he surrenders are in fact those responsive to the subpoena, *see Fisher*, 425 U.S. at 410, 96 S.Ct. at 1581, there are various means available to authenticate the documents wholly apart from the fact that Lee produced them. First Jersey has already admitted that such records are kept; indeed, at least some of them are required by law to be kept. The records can be compared to those already produced by other branch managers to demonstrate their authenticity. In short, Lee's production of the documents provides little value for purposes of authenticating the records, just as it provides little value in confirming their existence or Lee's possession.

Lee argues strenuously that by confirming his current possession of the documents he will be helping the government, because possession will serve to show guilty knowledge of the allegedly fraudulent First Jersey transactions. For this contention he relies on *Saxon,* wherein the target of the subpoena, a former executive of Saxon, had wrongfully misappropriated the documents from the company. In *Saxon,* however, the potential inference of guilty knowledge arose from the wrongfulness of their possession; the production could support the premise that the subpoenaed witness's "removal of the documents from the company's files amounted to a tacit admission that he had knowledge of their incriminating contents and absconded with them because he believed they were 'smoking gun' evidence of his guilt." *Saxon,* 722 F.2d at 987.

Here, to the contrary, the mere possession of the documents by Lee would not support any inference against him with regard to their contents. There is no implication here that Lee's custody of the documents is wrongful; rather, these and other similar records are held by the branch managers in the normal conduct of First Jersey's business. We have interpreted *Saxon* to recognize a fifth amendment privilege where to have to produce the documents "alone would qualify as testimony incriminating [the producer] for having taken those records." *Two Grand Jury Subpoenae,* 769 F.2d at 59.

Nevertheless, there remains the possibility that criminal liability might be associated with Lee's current possession of the documents apart from the underlying investigation. In *Saxon,* the possession was found potentially to create an inference of guilty knowledge of the subject matter of the investigation for which the documents were sought. Here, possession of the records might well incriminate Lee in a conspiracy to obstruct justice by keeping the documents out of the hands of the SEC, a possibility adverted to by the SEC during the hearing below. *See* Transcript of Record of Proceedings of January 4, 1988, at 3, Jt. App. at 226 ("We have some reason to believe that there is a cooperative endeavor on the part of First Jersey and some of these third parties to prevent us from getting hold of the documents."); at 22, Jt. App. at 245 (counsel for Lee noting that "there is an implication that there was an impropriety involved" in Lee's possession of the documents).

Even as to this possibility, however, the act of producing the documents will not incriminate Lee because, as we have already discussed, his possession of the documents is a foregone conclusion. Any potential for liability arising from that possession—whether it be for the original SEC investigation or for any subsequent wrongdoing associated with his appropriation of the documents—will not be enhanced by Lee producing the documents.

We note, however, that the problem of an individual's fifth amendment claims as to the act of producing corporate documents is a recurring one. *See United States v. Antonio J. Sancetta, M.D., P.C.,* 788 F.2d 67, 74–75 (2d Cir.1986); *In re Grand Jury Subpoenas Issued to Thirteen Corporations,* 775 F.2d 43, 45–46 (2d Cir.1985) ("*Thirteen Corporations*"); *Two Grand Jury Subpoenae,* 769 F.2d at 57; *Saxon,* 722 F.2d at 982–83. We previously have approved of the practice, where the corporation is the target of a subpoena (or, as here, a rule 34 request to produce accompanied by a court order compelling production), of compelling the corporation to designate someone who can produce the requested records without risk of self-incrimination. If necessary, the corporation must appoint an agent especially for the purpose of producing the materials. *See, e.g., Thirteen Corporations,* 775 F.2d at 48.

In this case, the district court might have ordered First Jersey to see that the documents were produced by some corporate official(s) other than the branch managers whom it said were claiming the fifth amendment privilege. Indeed, such a course might still be the best alternative as to the branch managers who did not intervene but who may still be claiming a fifth amendment privilege. Once some other corporate official becomes the one to pro-

duce the documents, it would be unnecessary to litigate the claims of each individual branch manager.

Since, however, Lee, alone among the branch managers, took the step of intervening in the case to assert his claim of privilege, and since we agree with the district court that Lee, at least, has no valid claim to refuse to produce the documents, there is no need for First Jersey to appoint an agent to produce those records.

The order of the district court is affirmed.