## In re EIGHT GRAND JURY SUBPOENAE DUCES TECUM.

### No. M11–188.

United States District Court, S.D. New York.

Nov. 16, 1988.

Cadwalader, Wickersham, & Taft, Earl H. Nemser, Pamela Rogers Chepiga, Kathryn L. Hoenig, of counsel, for movants.

Rudolph W. Giuliani, U.S. Atty. for the So. Dist. of New York, Peter Lieb, Asst. U.S. Atty., of counsel, for the Government.

## OPINION & ORDER

EDELSTEIN, District Judge:

A grand jury sitting in this district issued eight subpoenas duces tecum on July 5, 1988 to an individual ("John Doe") and five companies of which Doe is a shareholder ("A," "B," "C," "D," and "E"). The government has moved for an order holding Doe, A, B, and C ("Movants") in contempt of court. The Movants, however, have cross-moved for an order (1) pursuant to Fed.R.Crim.P. 17(c) quashing the eight subpoenas; (2) granting an evidentiary hearing and pre-hearing discovery on the cross-motion to quash the subpoenas; (3)

pursuant to Fed.R.Crim.P. 6(e) sealing all papers filed and testimony taken in connection with these cross-motions; and (4) granting the Movants 30 days from the date of entry of a court order to respond to those subpoenas not quashed by the court.

## BACKGROUND

On December 12, 1986, federal agents executed a search warrant at the offices of the Movants [1] and seized ninety-one cartons of property. On December 31, 1986, Movants' attorney notified the United States Attorney's Office that many of the seized documents were outside the scope of the warrant, and requested the documents be returned. Eventually, Movants compiled a 204 page list of those documents they claimed were seized outside the scope of the warrant. On April 25, 1988, after reviewing the first four cartons of documents, the Assistant United States Attorney in charge of the investigation notified the Movants attorney that many of the documents seized in fact appeared to be outside the scope of the warrant. Finally, on June 14, 1988, the Movants made a motion for the return of the illegally seized documents, pursuant to Fed.R.Crim.P. 41(e). The motion was dismissed as moot when the government agreed to return all the documents seized on December 12, 1986.

On July 5, 1988, federal agents returned the documents in dispute to the Movants' offices. After the documents had been unloaded at the Movants' office, the agents served the Movants' attorney with two subpoenas directed to Doe and four directed at the custodian of records of Corporations A, B, D, and E. One of the subpoenas to Doe called for production of telephone log books, message books, and other records that had been outside the scope of the original search warrant ("Doe Telephone Subpoena"). The five remaining subpoenas traced the language of the original search warrant ("Copycat Subpoenas"). On August 8, 1988, two subpoenas, identical to the Doe Telephone Subpoena (collectively, "Telephone Subpoenas"), addressed

---

1. The Movants, as well as other entities conduct-
ed their businesses from the location searched.

to Corporations B and C were served on Doe's attorney.

The Movants contend that all eight subpoenas should be quashed. The Copycat Subpoenas, according to Movants, serve no legitimate investigative purpose and serve merely to cure the taint of the original illegal search. Movants further contend that the Copycat Subpoena directed to Doe violates his fifth amendment privilege against self-incrimination. In addition, Movants contend that service of the two Copycat Subpoenas directed at Corporations D and E was improper because Doe is not the custodian of records and further, production of such documents would violate his fifth amendment privilege against self-incrimination.

## DISCUSSION

### A. *Grand Jury Abuse*

The grand jury is deeply rooted in the American criminal justice system. Its twofold purpose is to determine whether there is probable cause to believe a crime has been committed and to protect citizens from unfounded criminal charges. *See Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972). In order to achieve these twin aims, the grand jury is accorded wide latitude to investigate. *See Costello v. United States*, 350 U.S. 359, 361–62, 76 S.Ct. 406, 407–08, 100 L.Ed. 397 (1956). As noted by the Supreme Court: " 'A grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined....' " *United States v. Dionisio*, 410 U.S. 1, 13, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973) (quoting *United States v. Stone*, 429 F.2d 138, 140 (2d Cir. 1970)).

■ Nevertheless, the grand jury's power to investigate is subject to some limitations. The grand jury may not, for example, violate a valid privilege. Thus, it may not require a witness to answer questions in violation of the witness's fifth amendment privilege against self-incrimination. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

The grand jury also may not issue a subpoena so broad as to impinge unreasonably on legitimate fourth amendment rights. Finally, the grand jury may not obtain evidence for any purpose, but only to pursue legitimate goals. In this regard, the grand jury may not pursue its investigation for the sole purpose of preparing a pending indictment for trial. *See United States v. Dardi*, 330 F.2d 316, 336 (2d Cir.), *cert. denied*, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964).

■ Against this background of the grand jury's broad but circumscribed powers, the Movants contend that the subpoenas at issue in this case constitute an abuse of the grand jury process. The material demanded by the subpoenas, according to the Movants, was in the government's possession for nineteen months prior to the issuance of the instant subpoenas. The Movants contend that the government has misused the seized documents by providing access to various government agencies outside the Justice Department during the months that material was in the government's possession. The Movants further reason that the documents could have been —and in fact may have been—shown to the grand jury during that time. The Movants thus conclude that the subpoenas were not issued for a valid investigative purpose, but merely to cure the perceived constitutional taint created by the concededly overbroad search on December 12, 1986.

The question is a close one. The government, by its own account, has apparently allowed outside agencies including Postal Inspectors, Internal Revenue Agents, and, most notably, agents of the Securities Exchange Commission, access to the seized materials. The court does not favor such investigative tactics by the government. Nevertheless, this is neither the appropriate time nor forum to remedy this situation. If grand jury material has been impermissibly revealed to government agencies, the remedy would lie in a proceeding instituted by such agency. *See generally* Fed.R.Crim.P. 6(e).

With respect to the purpose of the subpoenas, the government avers that there is

a legitimate investigative purpose for such subpoenas. The government provides no factual basis for its representation of good faith. The court would have hoped the government had specified why the grand jury needs the materials for its investigation, particularly in light of the fact that the representation was made in a sealed *ex parte* affidavit. Nevertheless, the court finds that this not the proper time to address potential grand jury abuses by the prosecution.

Due to the broad scope of the its mission, a presumption of regularity attaches to grand jury proceedings. *See Costello, supra,* 350 U.S. at 363, 76 S.Ct. at 408. Accordingly, to permit the grand jury to pursue its aims, a district court should hesitate to interfere with continuing grand jury proceedings. *See Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). It is in part due to these concerns that the Supreme Court has held the exclusionary rule inapplicable to grand jury proceedings. *See United States v. Calandra,* 414 U.S. 338, 354–55, 94 S.Ct. 613, 622–23, 38 L.Ed.2d 561 (1974).

The allegations made by the Movants are serious; they may even have some merit. Nevertheless, there is currently no indictment pending. The government has asserted a bona fide investigative purpose for the subpoena. More important, any potential abuse of the grand jury process can be adequately remedied after indictment. If no indictment is handed up, then there will be no need to address the question. In sum, at this stage of the proceeding the court sees no reason to interfere with the grand jury until after an indictment, if any is forthcoming, is filed. At that time, a court can entertain a challenge to the indictment as well as the admissibility at trial of evidence obtained by the instant subpoenas. *See* Fed.R.Crim.P. 6, 12.

### B. *Doe's Fifth Amendment Privilege*

■ Doe claims that compliance with the copycat subpoena directed to him personally will violate his fifth amendment privilege against self-incrimination because the production of the documents demanded by the subpoena would be testimonial self-incrimination. Doe contends that the subpoenas directed at any custodian of records for Corporations D and E should be quashed because he is only a shareholder, not a custodian of records.

As an initial matter, the Movants do not contend that the corporate documents requested are privileged under the fifth amendment because a corporation has no fifth amendment privilege. *See* case. Thus, as to corporate documents, Doe's only putative privilege stems from the act of producing the documents in question. The Supreme Court, however, has held that a corporate custodian may not invoke the fifth amendment to resist production of corporate records. *See Braswell v. United States,* —— U.S. ——, 108 S.Ct. 2284, 2295, 101 L.Ed.2d 98. In light of *Braswell,* Doe cannot resist a subpoena on the ground that the act of production might tend to incriminate him.

In *Braswell,* the Court concluded that production of documents by a corporate agent does not implicate the fifth amendment. The crux of the Court's reasoning is that "because the custodian acts as a representative, the act is deemed one of the corporation and not the individual. *Braswell, supra,* 108 S.Ct. at 2295. As a result, the government cannot use the *individual* act of production against the individual in a later criminal prosecution, because the act is attributable to the corporation. The most the government could do would be to introduce the *corporate* act of production. *Braswell,* therefore, defeats Doe's contentions with respect to the subpoenas directed to the custodian of records for Corporations D and E. Doe's compliance with those subpoenas, insofar as they would constitute a corporate act, would not violate a valid fifth amendment privilege.

Doe also contends that the subpoenas directed at Corporations D and E require production of personal records, rather than corporate records. Doe personally was served with these subpoenas at the United States Attorney's Office. He now contends that he is not a custodian of records for either Corporation D or E. Neverthe-

less, Doe has provided no affidavit to the effect that he is not custodian for D or E, and his attorney does not so state in the affidavit in support of this motion. The subpoenas are addressed to "any custodian of" D and E. In light of Doe's acceptance of service of the subpoena, he must demonstrate that he is not a custodian in order to excuse compliance. Doe has failed to establish this fact. Instead, he has made a blanket invocation of the fifth amendment. Absent a particularized showing that some or all of the documents requested are personal or that Doe has no control or custody of the records of D and E, he must comply with the subpoenas.

## C. *Telephone Subpoenas*

The Movants final challenge is to three identical subpoenas directed to Doe and Corporations D and E requiring production of records of calls and messages to Doe. The principal contention with respect to these three subpoenas is that they demand production of documents illegally seized on December 12, 1986.

The exclusionary rule does not apply in grand jury proceedings. *Calandra, supra,* 414 U.S. at 338, 94 S.Ct. at 615. Thus, there is no constitutionally-based rule that would require quashing these three subpoenas. The subpoenas could, however, be quashed pursuant to the court's supervisory authority. As noted *supra* in connection with the Copycat Subpoenas, the issues presented herein can be adequately addressed in a post-indictment motion for suppression of evidence. At that time, the court can hold an evidentiary hearing to determine whether the documents produced in compliance with the telephone subpoenas are in any way a fruit of the overbroad search; if so, the records can be suppressed. To examine this question now would be premature and would interfere with the grand jury's mission. Accordingly, the issue is better decided after there is an indictment pending.

## D. *Miscellaneous Issues*

The Movants request thirty days to comply with the subpoenas, in the event they are not quashed. The government requests compliance within ten days. As noted *supra,* the government had in its possession the bulk of the documents requested by the instant subpoenas for approximately nineteen months. During that time it could have chosen to present that evidence to the grand jury. Alternatively, the government could have returned the documents and issued these subpoenas sooner. At this stage a difference of twenty days does not appear unreasonably to delay this grand jury investigation. In light of the circumstances surrounding the issuance of the subpoena, the court orders Movants to respond to the outstanding subpoenas within thirty (30) days of this order.

Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, the papers filed in support of the instant motions are hereby ordered sealed.

SO ORDERED.