**In re ICS CYBERNETICS, INC., Debtor.**

**Bankruptcy No. 88–00478.**

United States Bankruptcy Court, N.D. New York.

Aug. 18, 1989.

Grass, Balanoff, Costa & Whitelaw, P.C., Syracuse, N.Y., for debtor;  Mary Lannon Fangio, of counsel.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., Andrew Baxter, Asst. U.S. Atty., Emil M. Rossi, Syracuse, N.Y., for Jonathan W. Allen; Garry Graber, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Before the Court is a motion by the Official Committee of Creditors Holding Unsecured Claims of ICS Cybernetics, Inc. ("Committee"), pursuant to Bankruptcy Rule ("Bankr.R.") 7037 and Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 37(a), to compel Jonathan W. Allen ("Allen") to provide oral answers and handwriting exemplars and produce certain documents in response to questions asked at a Bankr.R. 2004 examination conducted pursuant to a subpoena. Alternatively, the Committee seeks an *in camera* hearing conducted by the Court to determine the applicability of Allen's Fifth Amendment Privilege Against Self Incrimination on a question-by-question and document-by-document basis. The motion was argued on January 31, 1989 in Syracuse, New York, whereupon the Court directed Allen to provide samples of his signature and reserved decision on the two remaining requests.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction over the parties and the subject matter by virtue of 28 U.S.C.A. §§ 1334 and 157 (West Supp. 1989). This core proceeding, 28 U.S.C.A. § 157(b)(1) and (b)(2)(A, E, O), is governed by Bankruptcy Rules ("Bankr.R.") 2004, 7037, 7052, 9014 and 9016.

## FACTS

ICS Cybernetics, Inc. ("Debtor"), a closely-held New York corporation engaged in the business of computer leasing and brokerage, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1989) ("Code"), on March 31, 1988. At that time, Allen, the holder of eleven of the Debtor's 123 shares of common stock and a director, was the Debtor's president, a position he had held since the company's inception in 1982.[1]

Allen was authorized by the Debtor's Board of Directors to file a Chapter 11 petition until April 8, 1988, which was done presumably at his direction after he signed the petition in his capacity as president on March 30, 1988. Among the various documents filed by leave of Court on May 16, 1988 and bearing the signature of Birger Hvalvik, a vice-president and director, was the Statement of Financial Affairs For Debtor Engaged In Business which, in describing its corporate structure, identified Lasse Nergaard as President, treasurer and director and made no mention of Allen.[2]

Pursuant to the Committee's ex parte application, an Order was entered July 13, 1988, directing the issuance of a subpoena to Allen for a Bankr.R. 2004 examination. Allen was duly served with the subpoena, issued August 18, 1988, which ordered him to appear on September 20, 1988 at the Debtor's offices to testify and bring

> any and all records, memoranda, correspondence and other documents in your possession, or which are available to you, relating to: the debtor's past or present business activities; to your employment relationship with the debtor; evidencing any transfers to or on your account made by the debtor between April 1, 1987 and March 31, 1988; or evidencing any transfers to or on account of the debtor by you between April 1, 1987 to March 31, 1988.

---

1. The remaining 112 shares are owned by Gewics AG, a foreign corporation with a Swiss address, identified in other proceedings before the Court in this case as an affiliate, if not the parent, of the Debtor.

2. The Court recently found that "Allen stepped down as President sometime in early April 1988." *In re ICS Cybernetics, Inc.,* Case No. 88–00478, slip op. at 7 (Bankr.N.D.N.Y. July 7, 1989).

By agreement, the examination was adjourned to October 4, 1988, the return date of an Order To Show Cause pursuant to Fed.R.Civ.P. 26(c) and 30(c), filed by Allen on September 27, 1988, for the quashing of the subpoena as well as protection from being compelled to give testimony and produce documents. Allen relied upon his absolute rights of self-incrimination and the United States Trustee's ("UST") referral of the Debtor's case's to the Office of the United States Attorney for the Northern District of New York ("U.S. Attorney") for criminal investigation. Said Order To Show Cause stayed the August 18, 1988 subpoena until further court order.

After the scheduled oral argument on October 4, 1988, the Court noted that Allen's application was essentially premature and denied it in full. Accordingly, the Order entered October 21, 1988 denied Allen's motion to quash the subpoena, vacated the stay and directed him to appear for the Bankr.R. 2004 examination within forty-five days.

Said examination was conducted on October 25, 1988 and was attended by counsel for the Committee, counsel for the Debtor, the Debtor's court-appointed manager, James P. Hassett, Allen and his attorney and counsel for McDonnell Douglas Corporation. After being sworn in and answering approximately seventeen questions concerning his current residence, birth, education, and work experience directly following college, his counsel informed counsel for the Committee that, based upon the Fifth Amendment privilege against self-incrimination, Allen would not be answering any questions relating to computers or the bankruptcy nor would he produce documents from the three boxes he had brought with him in response to the subpoena. Allen's attorney also refused to distinguish personal from corporate documents or identify those prepared by Allen in an officer, director or shareholder capacity.

Allen's attorney stated that the Debtor's bankruptcy had been referred for investigation to the U.S. Attorney and that he had no assurances that it would not affect his client, who had been the Debtor's day-to-day chief operating and chief executive officer for a number of years. He further stated that Allen's privilege extended to the production of documents because active production could, in certain circumstances, be a protected act and might even be construed as a waiver by a Federal or state prosecutor or other third party in the absence of a court order.

After objecting to Allen's position on document production, the Committee continued to question Allen. Allen responded to inquiries about his employment prior to 1974, his marital and dependent status and admitted that he was currently not employed. He answered "I respectfully refuse to answer" to some eighty-five questions on subjects including the Debtor's corporate and capital structure and the identity of its officers, directors, or shareholders, its state of incorporation, its day-to-day operational activities after 1985, his business relationship with the Debtor and his stock ownership, the Debtor's business transactions or business relationships with any entity or individual including Gewics Corporation, Electronic Data Systems Corporation, McDonnell Douglas Corporation, the Union Bank of Norway, Ciba–Geigy Corporation, Norstar Bank, Lefac, all creditors listed in the unamended Schedule A–3 filed with the Chapter 11 petition, the Debtor's affiliated corporations, its former accounting firm or counsel, employees, officers or his wife or other relatives, the transfer of equity in Debtor's computer equipment to any of its employees or officers, his involvement in computer leasing industry, his education in computers, computer engineering, data processing, computer and equipment leasing, his knowledge of the location of Debtor's property or equipment, its financial condition or past financial operations. Allen also refused to identify Schedule A–3 or his signature on it or testify to its contents nor would he provide handwriting samples.

The Debtor also posed twelve questions to Allen regarding the identification of four individual proofs of claim he allegedly filed in the Debtor's case and his signature on them, positing that he had waived his privi-

lege on any matter upon which he made those claims and should therefore be coerced into testifying. Allen's counsel objected to further questioning by parties other than the Committee since his client was there pursuant to the Committee's subpoena.

Thereafter, on January 19, 1989, the Committee filed the present motion, made returnable on January 31, 1989.

In a memorandum filed prior to the January 31, 1989 hearing, the Committee argues that Allen's Fifth Amendment privilege is inapplicable to the "innocuous" questions it posed at the Bankr.R. 2004 examination because 1) the Debtor and not Allen has been referred to the U.S. Attorney for investigation and, 2) the subject of those questions was not incriminating in that they generally concerned the Debtor's business and included matters of public record. Moreover, all the questions related to Debtor and "cannot be construed as incriminating or as forming a link in the chain of evidence leading to conviction." Motion And Declaration In Support Of Order Compelling Jonathan W. Allen To Provide Testimony Under Oath And To Produce Documents, para. 7 (Jan. 17, 1989).

The Committee further notes that Allen had no reason for apprehension since nothing indicated he was the focus of any activity by the U.S. Attorney, be it through grand jury investigation or subpoena, or that "his position as the Debtor's president [had] caused him to engage in inherently criminal activity." *Id.* In the absence of providing facts to substantiate his claim of privilege, the Committee maintains that Allen must be compelled to answer the questions.

With regard to the production of documents, the Committee maintains that Allen's privilege also does not attach to corporate documents prepared voluntarily even though production might tend to incriminate him personally. It also notes that the privilege does not apply to those records required to be kept by law because they have basically become public documents nor can Allen assert a privacy expectation to those held by him in a representative capacity. As to Allen's personal documents, which the Committee asserts comprise very little if any of those requested, the privilege does not pertain in that they were voluntarily prepared and pre-existing. Further, where the act of producing documents prepared in a representative or personal capacity lacks communicative aspects in and of itself, the privilege is not implicated, regardless of the content since the act of production is generally non-testimonial.

In response, Allen contends that he has not been offered immunity for his testimony or production of records from the Department of Justice nor has that Office communicated whether it considered his compliance with the subpoena to be a waiver of his right against self-incrimination.

Allen maintains that without 1) immunity, 2) clarification of the scope and direction of the Department of Justice's investigation, 3) the Court's review of the documents responsive to the subpoena, and 4) some indication from the relevant prosecutors on the waiver issue, he cannot be protected and has no alternative but to constitutionally assert his "absolute" right against self-incrimination.

At the hearing, appearances were noted by Andrew Baxter, Esq. ("Baxter"), Assistant U.S. Attorney, who stated that he was there in the role of prosecutor at the Committee's request, and attorneys for the Committee, the Debtor and Allen.

In recapping the events enumerated above, the Committee stated that Baxter was asked to appear because Allen had raised in his papers the fact that the U.S. Attorney had not been noticed on the motion. It represented that Baxter was in charge of the U.S. Attorney's investigation of Allen and that his position was that this Court would not have jurisdiction to issue a "no waiver" declaratory statement in response to Allen's concerns. The Committee also opined that Allen would probably accept a "no prosecution" letter from Baxter but that that was also unacceptable to the U.S. Attorney. It also stated that it would be satisfied with the Court's ruling on only those questions posed at the Bankr.R. 2004 examination.

Debtor's counsel supported the Committee's motion and claimed that there were many missing files which would be subject to a turnover action if established as the Debtor's property. Baxter, characterizing himself as an "observer," stated that his office was continuing the investigation and all he could say was that it stemmed from the UST's referral and a basic allegation of the Debtor's conversion of computer equipment when under Allen's control, a cause of action that might ultimately be more appropriate in a state, rather than a federal, forum. While not objecting to the Court conducting an *in camera* hearing, he admitted that his office could not provide the type of assurances Debtor's counsel was seeking—a grant of immunity or a "no prosecution" letter—due to the preliminary stage of the investigation, nor would it acknowledge any waiver ruling by the Court.

Allen contended that he had no idea if conversion was the only issue in the investigation and that responding to all questions relating to computers, the Debtor or bankruptcy was very dangerous for him absent clarity as to the investigation's scope and the state ramifications. With regard to the document request, his counsel relied upon the act of production doctrine announced in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and its unsettled progeny to raise the following considerations: 1) whether or not documents were prepared by witness, 2) whether the act of production itself involved any kind of authentication, 3) whether the existence of the documents was a "foregone conclusion", 4) whether any circumstances existed under which possession of the documents themselves might be considered unlawful, and 5) whether the subpoena issued requires any oral testimony in connection with production.

The Committee responded that Allen's predominant role in the Debtor's affairs prevented it from getting the information it sought herein from other sources and that

at other examinations, the witnesses repeatedly referred to Allen.[3]

After concluding that the privilege did not attach to handwriting samples and granting that part of the Committee's motion, the Court reserved on the testimony and document portion to determine, *inter alia*, whether an *in camera* hearing was necessary.

## ISSUE

Can the former president of a corporate debtor invoke the Fifth Amendment privilege against self-incrimination with respect to answering questions and producing documents relating to the corporation's past and present business activities, his employment relationship and any transfers made between him and the corporation within one year prior to the bankruptcy filing where the U.S. Attorney is conducting a criminal investigation of the corporation's bankruptcy case?

## DISCUSSION AND CONCLUSIONS OF LAW

The instant contested matter arises within the context of a Bankr.R. 7037 motion to compel compliance with a subpoena issued pursuant to Bankr.R. 2004 which authorizes, in conjunction with Fed.R.Civ.P. 45 and Bankr.R. 9016, the attendance for examination and the production of documentary evidence from any entity, on motion of any party in interest, if it relates to a debtor's acts, conduct, property, liabilities, financial condition or any matter which may affect the administration of the debtor's estate or the debtor's right to a discharge. Additionally, in a Chapter 11 reorganization case, the inquiry may extend to "the operation of any business and the desirability of its continuance, the source of any money or property acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan."

---

**3.** The bankruptcy case docket indicates that between June 23, 1988 and May 2, 1989, nine other witnesses were subject to Bankr.R. 2004 examinations ranging from Allen's wife to a current director, former officers, general counsel, bookkeeper and Gewics' accountant.

General discovery in a bankruptcy case is governed by Fed.R.Civ.P. 26–37, as incorporated by Bankr.R. 7026–7037, and Fed.R. Civ.P. 26(b)(1) defines its scope as any relevant matters that are not privileged. *See also* Code § 542(e). The privilege raised here to shield the discovery sought by the Committee and supported by the Debtor is one of constitutional dimensions specifically recognized in Title 11, *see* Code §§ 344, 727(a)(6)(B, C)—to wit, the Fifth Amendment which provides, in pertinent part, that "[n]o person … shall be compelled in any criminal case to be a witness against himself …"

## I. General Principles

■■■ The proper assertion of the Fifth Amendment privilege has three prerequisites: 1) "compelled" disclosure, 2) that is "testimonial" and 3) "incriminatory." *See Two Grand Jury Contemnors v. United States (In re Grand Jury Subpoena)*, 826 F.2d 1166, 1168 (2d Cir.1987), *cert denied* — U.S. —, 108 S.Ct. 2870, 101 L.Ed.2d 905 (1988); *Rivoli Grain Co. v. Litton (In re Litton)*, 74 B.R. 557, 559 (Bankr.C.D.Ill. 1987) (citing *In re Connelly*, 59 B.R. 421, 431 (Bankr.N.D.Ill.1986). *See also Fisher v. United States, supra*, 425 U.S. at 391, 96 S.Ct. at 1569. It protects a witness from providing oral or written testimony that would furnish a link in the chain of evidence needed for criminal prosecution and attaches even if that risk is remote, for it is the possibility, rather than the likelihood, of prosecution that controls. *See United States v. Edgerton*, 734 F.2d 913, 921 (2d Cir.1984); *Moll v. U.S. Life Title Ins. Co. of New York*, 113 F.R.D. 625, (S.D.N.Y. 1987); *Marine Midland Bank, N.A., v. Endres (In re Endres)*, 103 B.R. 49 (Bankr.N. D.N.Y.1989) (citing to *Pillsbury v. Conboy*, 459 U.S. 248, 265 n. 1, 103 S.Ct. 608, 618 n. 1, 74 L.Ed.2d 430 (1983) (Marshall, J., concurring) and *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). It is not a court's role to speculate whether or not the witness will be prosecuted once the determination has been made that the answers sought would tend to incriminate. *See United States v.*

*Edgerton, supra*, 734 F.2d at 921 (citations omitted).

With respect to the compulsion element, the Fifth Amendment privilege prohibits the use of "physical or moral compulsion" against the person exercising the privilege. *See Fisher v. United States, supra*, 425 U.S. at 397, 96 S.Ct. at 1574 (citations omitted); *Doe v. United States*, 860 F.2d 40, 46 (2d Cir.1988) (quoting *Holt v. United States*, 218 U.S. 245, 252–53, 31 S.Ct. 2, 6–7, 54 L.Ed. 1021 (1911)). Because this element of physical or moral compulsion is absent, records required to be maintained by law and the contents of those voluntarily prepared and regularly kept in the course of business or otherwise are recognized as exceptions to the Fifth Amendment privilege. *See United States v. Doe*, 465 U.S. 605, 610–12 & n. 10, 104 S.Ct. 1237, 1240–42 & n. 10, 79 L.Ed.2d 552 (1984); *In re Sealed Case*, 877 F.2d 83, 87–88 (D.D.Cir.1989); *In re Two Grand Jury Subpoenae Duces Tecum*, 793 F.2d 69, 73 (2d Cir.1986); *United States v. North*, 708 F.Supp. 402, 404 (D.D.C.1989); *In re Mudd*, 95 B.R. 426, 431–32 (Bankr.N. D.Tex.1989); *In re Connelly, supra*, 59 B.R. 421, 440–41 (citing to *Shapiro v. United States*, 335 U.S. 1, 33, 68 S.Ct. 1375, 1392, 92 L.Ed. 1787 (1948).

The "required records" exception, applicable whether mandated by state or federal law, amounts to a waiver of any Fifth Amendment claim and requires a three-part showing: "1) the requirement that they be kept be essentially regulatory, 2) the records must be of a kind which the regulated party has customarily kept, and 3) the records themselves must have assumed 'public aspects' which render them analogous to public documents." *In re Doe*, 711 F.2d 1187, 1191 (2d Cir.1983) (citing *Grosso v. United States*, 390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968)), cited with approval in *In re Two Grand Jury Subpoenae Duces Tecum, supra*, 793 F.2d at 73. *See also In re Grand Jury Subpoena Duces Tecum Dated June 13, 1983 and June 22, 1983*, 722 F.2d 981, 987 n. 5 (2d Cir.1983) ("*Saxon*"); *Petition of Federal Deposit Ins. Corp.*, 640 F.Supp. 1178 (S.D. N.Y.1986).

■ The testimonial element of the privilege encompasses the witness' explicit or implicit communication in written, oral or other form that in and of itself asserts a fact or discloses information. *See Doe v. United States*, 487 U.S. 201, 108 S.Ct. 2341, 2347–50 & nn. 8–12, 101 L.Ed.2d 184 (1988); *In re Connelly, supra*, 59 B.R. at 431. "Physical acts will constitute testimony if they probe the state of mind, memory, perception, or cognition of the witness." *Braswell v. United States*, 487 U.S. 99, 126, 108 S.Ct. 2284, 2299, 101 L.Ed.2d 98 (1988) (Kennedy, J., dissenting).

■ The act of producing evidence in response to a subpoena has its own communicative aspects, completely separate and exclusive from the contents of the papers produced, in that it tacitly admits the existence, authenticity and witness' possession of the documents described in the subpoena. *See Fisher v. United States, supra*, 425 U.S. at 410, 96 S.Ct. at 1580; *United States v. Doe, supra*, 487 U.S. 201, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184; *United States v. Doe, supra*, 465 U.S. at 612–13 & n. 11, 104 S.Ct. at 1242 & n. 11. This shift away from the privacy and content-oriented rationale articulated in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) in self-incrimination jurisprudence under *Fisher v. United States, supra*, 425 U.S. at 399–401, 96 S.Ct. at 1575–76 and *Andresen v. Maryland*, 427 U.S. 463, 478, 96 S.Ct. 2737, 2747, 49 L.Ed.2d 627 (1976), *see United States v. Doe, supra*, 465 U.S. at 610 n. 8, 104 S.Ct. at 1240–41 n. 8; *United States v. Edgerton, supra*, 734 F.2d at 918 n. 4; *Saxon, supra*, 722 F.2d at 984–85, thus vests the properly asserted privilege in the act of producing documents, as well as in their contents, assuming the presence of the incrimination and compulsion elements.

■ Moreover, "for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals. . . . [in] that a corporation has no Fifth Amendment privilege." *Braswell v. United States, supra*, 487 U.S. at 104, 108 S.Ct. at 2288 (citing *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed.

652 (1906)). *See also U.S. S.E.C. v. First Jersey Securities, Inc.*, 843 F.2d 74, 76 (2d Cir.1988); *In re Eight Grand Jury Subpoenae Duces Tecum*, 701 F.Supp. 53, 56 (S.D.N.Y.1988). "The fact that the production of such books and records might tend to incriminate one acting in a representative capacity personally is immaterial." *In re Einhorn*, 33 B.R. 665, 667 (Bankr.E.D. N.Y.1983) (citing *United States v. White*, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944)). Thus, under the collective entity rule the custodian, as the corporation's agent, enjoys no content or act of production privilege with respect to corporate records under the Fifth Amendment. *See Braswell v. United States, supra*, 487 U.S. at 115, 108 S.Ct. at 2294; *In re Sealed Case, supra*, 877 F.2d at 86, 88.

## II. Allen's Testimony

This Court has recently ruled on the scope of the Fifth Amendment privilege against self-incrimination in oral examinations. In acknowledging that the criminal prosecution need not be probable or even imminent if the witness shows that there is a reasonable possibility that his answer will be used against him, the Court observed that

a total or blanket assertion of privilege claimed in advance of the questions can run afoul of the 'reasonable cause to apprehend danger from a direct answer' standard mandated by *Hoffman, supra*, since the witness' say-so does not of itself establish the hazard of incrimination . . . 'Reasonable cause' is present where a nexus exists between the risk of prosecution and the information requested. . . . Therefore, if the incriminatory nature is not obvious from the question or a blanket assertion of the privilege is made, the witness must explain in a limited fashion how his answer will be incriminatory. . . . That this minimal showing might partially compromise the very privilege, and protection, sought to be asserted cannot be avoided . . .

*In re Endres, supra*, 103 B.R. at 53–54 (citations omitted). An individual is entitled to invoke the privilege only where the

question is "genuinely threatening." *In re Hulon*, 92 B.R. 670, 675 (Bankr.N.D.Tex. 1989). However, the determination of that assertion's propriety where challenged, as here, rests "upon the trial court, guided by its own perception of the case's facts, to conduct a particularized inquiry into the scope and legitimacy of the claim with regard to each question asked." *Id.* 103 B.R. at 153.

■ Since the questions propounded by the Committee at the Bankr.R. 2004 examination are set forth in the certified transcript attached to its motion papers, the Court is able to make a finding herein whether or not Allen's constitutional privilege attaches. As indicated, Allen invoked his privilege against self-incrimination to some eighty-five questions by the Committee by responding with "I respectfully refuse to answer."

■ First, it is clear that inquiries into the basic duties, responsibilities and identities of the Debtor's directors and officers, including Allen, and employees, as well as into its business practices, standard operating procedures and day-to-day functions do not elicit incriminating evidence and cannot be privileged since the Debtor's business is not one of criminal activity. *See Carter–Wallace, Inc. v. Hartz Mountain Ind.*, 553 F.Supp. 45, 50 (S.D.N.Y.1982); *In re J.M.V., Inc.*, 90 B.R. 737 (Bankr.E.D.Pa. 1987). However, Allen did not provide a limited explanation as to why he was invoking his privilege to any of the eighty-five questions he refused to answer and, in effect, asserted a blanket privilege as to each. Assuming arguendo that all eighty-five questions were "innocuous", "innocuous" questions don't always result in innocuous answers, particularly in light of other developed facts. *See In re Morgan-roth*, 718 F.2d 161, 167 (6th Cir.1983) (citing to *Hoffman v. United States, supra*, 341 U.S. 479 at 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). Nonetheless, the Court cannot find that the answers required were of an incriminating nature, notwithstand-

ing the U.S. Attorney's ongoing criminal investigation of the Debtor's bankruptcy case. Therefore, the Court concludes that Allen must answer each and every one of the eighty-five questions demanded of him by the Committee in the Bankr.R. 2004 examination on October 25, 1988, as set out on pages twenty through forty-one of the certified transcript attached to the moving papers. The Court also directs Allen to answer the twelve questions posed by Debtor's counsel concerning the four proofs of claim he allegedly filed.[4]

This directive does not preclude Allen from proffering a particularized response—explaining "some nexus between the risk of criminal prosecution and the information requested," *In re Potter*, 88 B.R. 843, 850 (Bankr.N.D.Ill.1988), and his need to assert his constitutional privilege—to those questions seeking answers he perceives to be incriminating and not subject to the "required records" exception. For instance, his privilege does not extend to questions about the content of the Debtor's original A–3 schedule nor those concerning the state of the Debtor's incorporation, since both concern required records under Code § 521(1) and the New York Business Corporation Law, respectively. However, answers that could furnish a link to crimes not beyond the applicable state or federal statute of limitations would presumably be shielded. *See, e.g., United States v. Duncan*, 704 F.Supp. 820 (N.D.Ill.1989); *In re Stoecker*, 103 B.R. 182, 185–86 (Bankr.N.D.Ill.1989); *In re Hulon*, 92 B.R. 670, 675 (Bankr.N.D.Tex.1988); *In re J.M.V., Inc., supra*, 90 B.R. at 738; *In re Litton, supra*, 74 B.R. at 559–60; *In re Connelly, supra*, 59 B.R. at 434–35. Any such objection must be made by written affidavit submitted, with the question, to the Court for immediate *in camera* review.

### III. Allen's Act of Producing Documents

■ The resolution of Allen's act of production privilege with regard to the doc-

---

**4.** While the certified transcript indicates that Debtor's counsel took the position at the Bankr.R. 2004 examination that Allen's filing of proofs of claims constituted a waiver of his

Fifth Amendment privilege with regard to "any matter which he is making his claim," this issue is not before the Court, having neither been raised in the parties' papers or at the hearing.

uments contained in the three boxes he brought with him to the Bankr.R. 2004 examination on October 25, 1988 is squarely governed by the Court of Appeals for the Second Circuit's decision in *Saxon, supra,* 722 F.2d at 981. There, in extending the act of production doctrine enunciated in *Fisher v. United States, supra,* the three-panel court reversed and remanded the District Court's holding the former officer of a Chapter 11 corporation in contempt for his failure to produce corporate records in response to a grand jury subpoena duces tecum directed to him personally. Despite the former officer's having no legal right to the possession of corporate papers, whose contents were not protected from disclosure by the Fifth Amendment, the Court held that the individual had the right to invoke his privilege with respect to certain documents to the extent that his production of them would constitute an admission of possession which, when viewed with the case's other circumstances, would provide a basis for the inference of that former officer's guilty knowledge of their incriminating contents.

The individual, who had ceased to be employed as the corporate debtor's president soon after its Chapter 11 filing and who admitted to post-employment possession of Saxon documents, was the target of a grand jury investigation into alleged fraud in the company's financial statements. In opposition to the government's motion to compel compliance with the subpoena duces tecum he argued that most, if not all of the documents he possessed were duplicates of documents already held by the government and that his act of producing them would tend to incriminate him in violation of his Fifth Amendment rights.

The application of an individual's self-incrimination privilege to the act of producing corporate documents is a knotty and recurring problem. *See U.S. S.E.C. v. First Jersey Securities, Inc., supra,* 843 F.2d at 77 (and cases cited therein). "Once the officer leaves the company's employ, however, he no longer acts as a corporate representative but functions in an individual capacity in his possession of corporate records." *Saxon, supra,* 722 F.2d at 986–

87. As such, he can invoke the act of production doctrine with regard to those corporate records. *See id. See also United States v. Doe, supra,* 465 U.S. at 612–14, 104 S.Ct. at 1242–43; *In re Grand Jury Subpoenas Duces Tecum Aug. 1986,* 658 F.Supp. 474, 481 (D.Md.1987). Where, as here, the subpoena was issued some four months after Allen ceased to be the Debtor's president and was directed at him personally, and not at the Debtor—who would then presumably have been obligated to designate an agent to produce the requested records—his privilege must prevail unless and until the threat of incrimination is dispelled by a grant of immunity pursuant to Code § 344 and 18 U.S.C.A. §§ 6002–6003 (West 1985 & Supp.1989) or the issuance of a "no prosecution" letter from federal and state prosecutors. No longer the Debtor's officer, Allen only possesses the corporate records in a personal capacity and is fully able to shield himself under the act of production doctrine.

Thus, in certain situations where there is no agency, such as those involving an ex-employee, an individual's Fifth Amendment rights can provide a limited exception to the non-privileged act of producing corporate documents, undercutting the collective entity rule. *See also U.S. S.E.C. v. First Jersey Securities, Inc., supra,* 843 F.2d at 77; *In re Grand Jury Subpoenae Duces Tecum,* 769 F.2d 52 (2d Cir.1985); *Pacific Mutual Life Ins. Co. v. Amer. Natl. Bank,* 649 F.Supp. 281, 287 (N.D.Ill.1986); *Petition of Federal Deposit Ins. Corp., supra,* 640 F.Supp. at 1178. *Cf. Braswell v. United States, supra,* 487 U.S. at 118 n. 11, 108 S.Ct. at 2295 n. 11; *In re Sealed Case, supra,* 877 F.2d at 88.

The existence of records other than corporate documents required by law are not "foregone conclusions" and their production by Allen—he does not dispute his actual possession—could amount to a "formal testimonial admission ... that he possesses them [that] would tend to corroborate evidence that he misappropriated this evidence from Saxon [the Debtor]; it would thus enable the government to argue in any criminal proceeding against him that his

removal of the documents from the company's files amounted to a tacit admission that he had knowledge of their incriminating contents and absconded with them because he believed they were 'smoking gun' evidence of his guilt." *Saxon, supra,* 722 F.2d at 987.

The fact that it has not come to the Court's attention that the U.S. Attorney's criminal investigation has been terminated or resulted in a formal grand jury investigation is of no moment since the Court cannot speculate on the likelihood of prosecution but focuses on the possibility of prosecution—a very real prospect from any investigation that is underway or applicable statutes of limitations. *See In re Potter, supra,* 88 B.R. at 850; *In re Connelly, supra,* 59 B.R. at 430 ("An active criminal investigation is not required."). Nor is the fact that the investigation is apparently directed at the Debtor's bankruptcy case and not at Allen dispositive because it is undisputed that he directed its affairs as its key employee from the Debtor's corporate birth in 1982 to shortly after its Chapter 11 filing.

As for any documents contained in the three boxes that are Allen's personal documents, his Fifth Amendment right extends to his act of producing them, regardless of their unprivileged contents, because his initial refusal to turn over items he admits are responsive to the Committee's subpoena imparts a fear of incrimination which the Court does not find fanciful in light of the U.S. Attorney's investigation.

Thus, while the Court finds the Committee's motion to compel to be both procedurally proper and demanded by the circumstances of the Debtor's bankruptcy case, and although it is concerned at the adverse impact this ruling might have on the Debtor's reorganization efforts, *Saxon* is controlling. *Accord In re Connelly, supra,* 59 B.R. at 443–44. *See also In re Stoecker, supra,* 103 B.R. 182, n. 1 (noting Seventh Circuit's lack of adopting that extension of *Fisher*). However, turnover of the corporate documents, which would presumably constitute property of the estate, pursuant to Code § 542(e) does not authorize otherwise in flatly stating it is "subject to any applicable privilege." This conclusion is reached notwithstanding the importance of discovery in all litigation, including bankruptcy proceedings, and the need to broadly interpret the governing rules. *See Gary Plastic Packaging v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 756 F.2d 230, 236 (2d Cir.1985).

Accordingly, the Court grants the Committee's motion for an Order to Compel answers to all of the questions propounded at the October 25, 1988 examination within twenty days of the entry of this Memorandum–Decision, Findings of Fact, Conclusions of Law and Order and directs Allen to attend a continued Bankr.R. 2004 examination at the Debtor's offices.

The Court grants that portion of the Committee's motion as it relates to the production of required records both corporate and personal, such as those required under the New York Business Corporation Law (McKinney 1986), e.g. §§ 402 (certificate of incorporation), 624 (corporate books, records and minutes), Title 11 and Title 26 of the United States Code and other applicable statutes brought to the Court's attention by way of written affidavit.

Under the facts and circumstances of this motion, the Court denies that portion of the Committee's motion seeking production of all other records, memoranda, correspondence and other documents and deems them protected under Fed.R.Civ.P. 26(c), as incorporated by Bankr.R. 7026, since the act of producing those documents would be compelled self-incrimination in violation of the Fifth Amendment.

Should the Committee find it necessary, the Court will entertain an expedited application for an *in camera* hearing through written affidavits received by the Court to determine the applicability of Allen's Fifth Amendment privilege against self-incrimination and any applicable exceptions to specific questions and documents. Any acts performed in compliance with this Memorandum–Decision, Findings of Fact, Conclusions of Law and Order shall in no way constitute a waiver by Allen of his Fifth

Amendment privilege against self-incrimination.

The Court declines to award the expenses of the instant motion to the Committee pursuant to Fed.R.Civ.P. 37(a)(4) and Bankr.R. 7037 because it concludes that Allen's opposition was substantially justified.

IT IS SO ORDERED.