**In re The CASSANDRA GROUP, Debtors.**

**No. 00 B 41807(BRL).**

United States Bankruptcy Court, S.D. New York.

Feb. 16, 2006.

Bryan Cave LLP, by Robert A. Wolf, Esq., Thomas J. Schell, Esq., New York, NY, for Plaintiff.

Dana Giacchetto, Pro se.

### DETERMINATION OF OBJECTION TO RULE 2004 EXAMINATION ON SELF–INCRIMATION GROUNDS

BURTON R. LIFLAND, Bankruptcy Judge.

Before the Court is a Proposed Order (the "Proposed Order") filed by Robert L. Geltzer, the Chapter 7 Trustee ("Trustee") of The Cassandra Group ("Cassandra" or the "Debtor"), directing and compelling Dana Giacchetto ("Giacchetto") to produce documents and to appear at the Bankruptcy Court in the Southern District of New York for further examination by the Trustee pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Giacchetto has filed an objection to the Proposed Order.

### Background

On July 1, 2000 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). Thereinafter, the Trustee was appointed, duly qualified, and is now acting as such Trustee.

Prior to the Petition Date, the primary business of the Debtor was to render investment advisory services to various clients. Giacchetto was the principal, sole shareholder and chief officer of the Debtor from the time he caused the Debtor to be incorporated in 1991, until approximately April of 2000.

In April of 2000, the office of the United States Attorney for the Southern District of New York commenced a criminal proceeding against Giacchetto (the "Criminal Proceeding") charging him with having committed various fraudulent acts against clients of Cassandra, including misappropriation of client funds and improper use of funds for his own personal benefit.

On August 2, 2000, Giacchetto pled guilty to fraud in the Criminal Proceeding under Section 206 of the Federal Investment Advisor's Act, 15 U.S.C. § 80b–6, *et seq.* He was sentenced to 57 months federal incarceration on January 17, 2001, including an additional three years supervised release and restitution in the amount of $9,870,612.21. In his plea allocution, Giacchetto's counsel stated that it was their intention to "work as closely as we can both with the SEC and the bankruptcy trustee to try and determine the actual amount of loss, and do everything we can to make whole those people whose money has been misappropriated."

On or about April 3, 2000, the Securities and Exchange Commission (the "SEC") commenced a separate civil enforcement proceeding against Giacchetto and Cassandra (the "SEC Proceeding"). At a later date, Giacchetto consented to a judgment that was entered in the SEC Proceeding, which held him individually liable for dis-

gorgement of $14,376,332.64 (the "Giacchetto Consent Judgment"). The Giacchetto Consent Judgment also stated that the plaintiff, as well as the Trustee, would be entitled to execute on this judgment.

Prior to Giacchetto serving out his sentence, this Court issued two previous orders authorizing examination of Giacchetto pursuant to Federal Rule of Bankruptcy Procedure 2004. The first such order was entered November 22, 2000, at which time, Giacchetto made himself available only to invoke the Fifth Amendment privilege against self-incrimination as a basis for refusing to answer any substantive questions regarding the Debtor and its clients. The Trustee then sought further examination of Giacchetto pursuant to a second order entered February 5, 2001 (the "Second Order"). While the Trustee made no efforts to enforce the Second Order, Giacchetto's counsel informed the Trustee that Giacchetto would again invoke the Fifth Amendment.

On or about February 3, 2006, the Trustee filed the Proposed Order upon information and belief that Giacchetto may have access to significant sources of revenue. The Trustee cites numerous articles regarding interviews with Giacchetto, which allude to the following: a) Giacchetto may be forming a large food company called "Taste;" b) Giacchetto may be in the process of confirming a deal to publish his autobiography; and c) Giacchetto may have had recent work in a musical group known as "Waterworld." The Trustee believes that information provided by Giacchetto will have an impact on the administration of the Debtor's estate.

On or about February 6, 2006, Giacchetto filed an objection to the Proposed Order and indicated that he a plans to invoke his Fifth Amendment privilege. Giacchetto claims that the questions and/or examinations in the Proposed Order are "genuinely threatening" as they may involve Cassandra or his prior conduct, and he believes the Trustee will use the questions and examinations to erode his Fifth Amendment privileges.

The Trustee maintains, however, that the scope of the examination as set forth in the Proposed Order does not concern Giacchetto's past misconduct, but rather his present assets and present and prospective revenue sources.

**Discussion**

In general, "[t]he proper assertion of the Fifth Amendment privilege has three prerequisites: 1) 'compelled' disclosure, 2) that is 'testimonial' and 3) 'incriminatory.'" *In re ICS Cybernetics, Inc.*, 107 B.R. 821, 827 (Bankr.N.D.N.Y.1989) (citing *Two Grand Jury Contemnors v. U.S. (In re Grand Jury Subpoena)*, 826 F.2d 1166, 1168 (2d Cir.1987), *cert denied* 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 905 (1988)). The privilege exists to protect a witness from providing oral or written testimony that would " 'furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'" *United States v. Zappola*, 646 F.2d 48, 52–53 (2d Cir.1981) (citation omitted).

For disclosure to be considered "incriminatory" for Fifth Amendment purposes, there must exist " 'reasonable cause to apprehend danger from a direct answer,'" as a "witness' say-so does not of itself establish the hazard of incrimination." *In re ICS Cybernetics, Inc.*, 107 B.R. at 828–29 (quoting *In re Hulon*, 92 B.R. 670, 675 (Bankr.N.D.Tex.1988)).

Reasonable cause is present where "a nexus exists between the risk of prosecution and the information requested." *In re ICS Cybernetics, Inc.*, 107 B.R. at 828. "The claimant of the privilege must be 'confronted by substantial and real, and not merely trifling or imaginary,

hazards of incrimination.' " *United States v. Zappola,* 646 F.2d at 53 (quoting *United States v. Apfelbaum,* 445 U.S. 115, 128, 100 S.Ct. 948, 956, 63 L.Ed.2d 250 (1980)); *see also United States v. Bowe,* 698 F.2d 560, 566 (2d Cir.1983); *In re ICS Cybernetics, Inc.,* 107 B.R. at 828 ("An individual is entitled to invoke the privilege only where the question is 'genuinely threatening.' ") (citation omitted).

■ As such, blanket assertions of the Fifth Amendment privilege are prohibited and a court must seek to "undertake a particularized inquiry to determine whether the assertion was founded on a reasonable fear of prosecution as to each of the posed questions." *United States v. Bowe,* 698 F.2d at 566 (2d Cir.1983); *see also United States v. Zappola,* 646 F.2d at 53; *In re ICS Cybernetics, Inc.,* 107 B.R. at 829 (the determination of whether a Fifth Amendment privilege has been properly asserted rests "upon the trial court, guided by its own perception of the case's facts, to conduct a particularized inquiry into the scope and legitimacy of the claim with regard to each question asked").

■ As a general rule, in situations involving testimony related to prior criminal convictions, "where there can be no further incrimination, there is no basis for the assertion of the privilege." *Mitchell v. U.S.,* 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). There can be no further incrimination when sentence has been fixed and the judgment of conviction has become final. *Mitchell v. U.S.,* 526 U.S. at 326, 119 S.Ct. 1307 ("If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared."); *see also McCall v. Pataki,* 232 F.3d 321 (2d Cir.2000) ("Because [defendant] had already been convicted and sentenced with respect to the crime of which he was asked to speak, he had no right to refuse to answer on the ground of self-incrimination.").

■ Giacchetto has not articulated any reason whatsoever why the Trustee's examination of his assets, income, and sources of potential revenue could subject him to criminal liability. Indeed, Giacchetto voluntarily signed the Giacchetto Consent Judgment on March 21, 2001, after he pled guilty to fraud in the Criminal Proceeding. His objections respecting the ability to make payments in connection with that judgment have nothing to do with the Criminal Proceeding or any of the misconduct that gave rise to it.

## Conclusion

Since Giacchetto has already been sentenced and served most, if not all, of his sentence, no further risk of incrimination exists relating to any of the matters within the scope of the 2004 examination. As no risk of incrimination exists, Giacchetto cannot properly assert a Fifth Amendment privilege to avoid answering the questions posed respecting the subject matter in the Proposed Order. Thus, for the reasons cited above, Giacchetto's objection to the Proposed Order is overruled, the Trustee's Application to conduct a 2004 examination, the scope of which is defined in the Proposed Order, is granted, and a separate order was entered.