UNITED STATES of America, Plaintiff,

v.

**Stanley FRIEDMAN, Michael Lazar, Lester Shafran, Marvin Kaplan, Marvin Bergman and David Leff, Defendants.**

No. SS 86 Cr. 259(WK).

United States District Court,
S.D. New York.

June 23, 1986.

On Reconsideration Aug. 1, 1986.

See also 636 F.Supp. 462.

Irving P. Seidman, New York City, for movant Geoffrey Lindenauer.

Larry J. Silverman, Russo, Silverman & Vitaliano, New York City, for defendant Lester Shafran.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Geoffrey Lindenauer moves on fifth amendment grounds to quash a subpoena issued on behalf of defendant Lester Shafran calling for a wide variety of papers

claimed to be in Lindenauer's possession, including cancelled checks, bank statements, credit card receipts, car leasing receipts, Blue Cross and Blue Shield receipts, records of medical expenses, individual tax returns, telephone logs, and business calendars and diaries. The disposition of this motion is controlled by *United States v. Doe* (1984) 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552; *see also In Re Grand Jury Subpoena Duces Tecum* (2d Cir.1983) 722 F.2d 981. For reasons that follow we believe *Doe* requires that the motion be granted.[1]

In *Doe* Justice Powell delivered the opinion of the Court in which 5 Justices joined. Justices Marshall, Brennan and Stevens—concurring in part and dissenting in part—challenged one of the two propositions set forth in the opinion, but concurred in the other. It is the portion of the opinion as to which the Court was unanimous that here controls. In the unchallenged portion of that opinion, the Court re-affirmed the long-standing doctrine that an individual may not be compelled to produce documents in his possession if the act of production would involve self-incrimination. In a footnote illustrating this holding, the Court observed, 465 U.S. at 614 n. 13; 104 S.Ct. at 1243 n. 13,

> Respondent did not concede in the District Court that the records listed in the subpoena actually existed or were in his possession. Respondent argued that by producing the records, he would tacitly admit their existence and his possession. Respondent also pointed out that if the Government obtained the documents from another source, it would be admissible at trial. *See* Fed.R.Evid. 901. By producing the documents, Respondent would relieve the Government of the

need for authentication. *These allegations were sufficient to establish a valid claim of the privilege against self-incrimination.* (emphasis supplied)

We think that the quoted observation is here controlling. Lindenauer has entered into a cooperation agreement which protects him from prosecution by the United States Attorney for the Southern District of New York, the United States Attorney for the Northern District of Illinois and various New York State Agencies. He has advised us—and neither the United States Attorney nor defendant Shafran disputes this—that in addition to the crimes for which he might be subject to prosecution by those offices, it would be possible for the Government, acting through other agencies, to prosecute him for other crimes. Although no one suggests that there exists any present intention to prosecute him for such additional crimes, there is no legal obstacle to such prosecution should the Department of Justice at some future time decide to initiate one. It is clear that if Lindenauer were required to produce the documents pursuant to the instant subpoena, the Government would, in any future prosecution be relieved of "the need for authentication." It follows that the subpoena must be quashed.[2]

SO ORDERED.

## ON RECONSIDERATION

By Memorandum & Order dated June 23, 1986 we granted Geoffrey Lindenauer's motion to quash a subpoena for the production of documents which had been served on him by the defendant Lester Shafran. On July 3 we granted Shafran's motion to reconsider. The informative argument on

---

**1.** This case is unusual in that a defendant rather than the prosecution is seeking to overcome a person's fifth amendment rights. However, we see no reason why the same rules should not apply. We noted on oral argument that the government's ability to give its own witnesses immunity, while the defense has no such privilege, seems to give the government an advantage. However, the rule requiring this result—which rule the defendant does not challenge—is

rooted in clearly established considerations of public policy.

**2.** Lindenauer's cooperation agreement also promises him use immunity for documents produced before the Grand Jury or at trial. There is no promise of protection for documents produced pursuant to a subpoena but not introduced at trial.

reconsideration has greatly contributed to a clarification of the issues involved.

The demand for documents in Lindenauer's possession brings into focus the tension between *Fisher v. United States* (1976) 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 and *United States v. Doe* (1984) 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552. *Fisher* established that even personal documents in the hands of an individual are not protected by the fifth amendment just because the content of such documents would be incriminating. *Doe* modified that holding by ruling that if production of the documents would constitute a tacit admission of the existence of the documents and the subpoenaed person's possession thereof, or if the subpoenaed person's very production of the documents could at some future time relieve the Government of the need for authenticating them, their production would be prohibited by the amendment.

Shafran argues that the *Doe* case is inapplicable for two reasons: first, it could not possibly be relevant in any future prosecution of Lindenauer whether or not he possessed the documents; and second, since all of the subpoenaed documents are self-authenticating, his delivery of them could not in any way assist the Government in any future litigation. Lindenauer on the other hand asserts that the mere production of the documents, while it could not assist the Government in either of the ways specified by *Doe*, might nonetheless be highly incriminating by revealing the existence of such things as bank accounts of which the Government might not be aware and which might contain highly incriminating information. We think Lindenauer's reading of the *Doe* case to be correct, but we find it here inapplicable.

The linchpin of Lindenauer's argument is that delivery of the documents to Shafran (or to anyone else) might either reveal evidence of wrongdoing which is now unknown to the Government or a lead to such evidence. However, if in fact Lindenauer has already revealed such evidence (or such leads) to the Government, delivery of the documents to Shafran could do him no harm whatever. We shall accordingly modify the subpoena and restrict it to documents the production of which, under the foregoing analysis, could not harm Lindenauer. Thus, with respect to bank records we shall restrict it to such records respecting bank accounts of which Lindenauer has already informed the Government. With respect to telephone records we shall restrict it to such records for telephone numbers of which Lindenauer has already made the Government aware, and similar restrictions will apply to all other documents requested (except, of course, the retained copies of income tax returns which we believe to be wholly unprotected by the fifth amendment, and the credit card information with respect to accounts specifically identified in the subpoena).[1]

There is no need for any hearing to determine what documents would be covered by the subpoena as so modified. Lindenauer knows what information he has heretofore given to the Government. If, in the light of that knowledge, he fails to honor the subpoena and such knowledge is subsequently made manifest (as it undoubtedly must be in the course of continuing litigation) he will be subject to substantial penalties for civil and criminal contempt of court.

With respect to the telephone and medical records, we make special exceptions. As to the former, while it seems obvious that many of those records would reflect business calls which might be highly rele-

---

**1.** At oral argument there was much discussion as to whether or not the fifth amendment had been waived. In our view this was a wholly irrelevant discussion. The fifth amendment, as explained by *Doe*, protects a person from being compelled—either through testimony or testimonial act—to provide anyone with information (except what might be contained in the unprivileged document itself) which, if it came to the Government's attention, could increase the provider's possibility of being prosecuted for crime. As we have structured the subpoena, Lindenauer will provide no such information that is not already known to the Government. It follows that the fifth amendment is in no way implicated, and need not have been "waived."

vant to the instant lawsuit, it seems equally obvious that many such calls would be of a highly personal nature, either by Lindenauer or other members of his household, which would be wholly irrelevant and the disclosure of which would simply amount to an unjustified invasion of privacy. Such records shall accordingly be turned over to defense counsel pursuant to a stipulated protective order, to be agreed upon by counsel, providing that any of them found to be irrelevant to the issues of this trial shall remain confidential.

With respect to the medical records, we excise that demand from the subpoena. Defense efforts to discover Lindenauer's medical and psychological records thus far have been extensive and amply-litigated, and yielded nothing that we consider relevant to this lawsuit. Since it appears to us that these further general requests for "any and all medical records" constitute an impermissibly broad fishing expedition into highly personal and private matters unlikely to yield relevant evidence, we decline to order their production.

SO ORDERED.