UNITED STATES of America,

v.

Jacob FREIDUS, Defendant.

No. 88 Civ. 6116 (RWS).

United States District Court,
S.D. New York.

March 7, 1991.

---

Otto G. Obermaier, U.S. Atty. S.D.N.Y., New York City (Steven C. Bennett, Asst. U.S. Atty., of counsel), for U.S.

Gold & Wachtel, New York City (William B. Wachtel, of counsel), for defendant.

## OPINION

SWEET, District Judge.

The United States of America (the "Government"), the plaintiff in this action, has moved pursuant to Rules 34 and 37(a)(4), Fed.R.Civ.P., for an order compelling production of documents from third-party witness Ella Freidus ("Mrs. Freidus") and for costs and expenses in connection with the Government's preparation of this motion. For the reasons set forth below, the Government's Rule 34 motion will be granted after an *in camera* review with respect to those documents not protected by Fifth Amendment privilege of Mrs. Frei-

dus. The Government's motion for attorney's fees and costs is denied.

### The Parties

Defendant Jacob Freidus ("Freidus") is the subject of a default tax judgment that the Government is trying to satisfy in the underlying action. Mrs. Freidus, from whom the Government seeks the documents that are the subject of the instant motion, is Freidus' wife.

### Facts and Prior Proceedings

On September 1, 1988, the Government filed an action against Freidus to collect deficiencies in income tax returns for the tax years 1949–61. After Freidus failed to respond to the personally served summons by appearance, answer or motion, the court entered default judgment against him on November 21, 1988 in the amount of $17,-067,796.99, exclusive of interest and statutory additions accrued and accruing from August 1, 1988.

In an effort to enforce the judgment, the Government has attempted to gather information about Freidus' assets by identifying and seeking production of certain documents (the "documents").

The Government first tried both to depose and compel production of documents from Mrs. Freidus by subpoena, but U.S. Marshals were twice unable to effect service of such subpoenas.

The Government then attempted to depose Freidus. After failing to appear for deposition on several occasions, Freidus sought a postponement of the second court-ordered deposition. The deposition was held on August 31, 1989. Testifying without the presence of counsel for approximately three hours, Freidus made no claims of Fifth Amendment privilege. He identified three file cabinets of documents which were maintained at the residence he shared with his wife on Dock Hollow Road in Cold Spring Harbor, New York (the "residence"). He stated that the cabinets contained "files, papers, correspondence" concerning *inter alia,* prospectuses for the purchase of land, art, securities, bank accounts, and mortgages all "related to Mrs. Freidus' finances." In addition to a general description of the documents, Freidus'

testimony at the August 31 deposition also provided information about specific financial transactions involving his wife, whom he described as an investor in land, art, and horses. Freidus also identified specific corporations with which Mrs. Freidus is affiliated.

Despite the parties' efforts to continue the deposition and despite a court order entered on September 20, 1989 directing Freidus to testify by deposition and to produce documents, including all those maintained at the residence, Freidus refused to testify at the deposition scheduled for September 29, 1989.

On October 4, 1989, the court entered an order directing that a warrant issue for Freidus' apprehension and detention for his failure to testify. The same order directed the appointment of counsel to represent Freidus in connection with contempt proceedings. On October 12, on consent of the Government, the contempt proceedings were put over until October 20, with the understanding that the contempt charges would be dismissed or withdrawn should Freidus testify and produce the documents at a deposition prior to that time.

At a deposition on the morning of October 20, Freidus claimed that he could not produce the documents because his wife refused to give her permission to release them. Later that same day, the court adjourned the Government's application for an order compelling Freidus to produce the documents. The court indicated that it was not yet prepared to consider the issue of control of the documents, but noted that the outstanding orders would permit the government to ascertain the files' location and contents. On the afternoon of October 20, during the continuation of Freidus' deposition, counsel for Freidus asserted that the existing orders were insufficient to authorize government agents to enter the residence.

On October 27, 1989, the Government served upon Mrs. Freidus a notice of deposition, which called for Mrs. Freidus to appear, to testify, and produce documents on December 1, 1989. A subpoena for Mrs. Freidus' deposition was issued on that same date, copies of which were served

upon her by Airborne Express, regular mail, and registered mail on November 3, 1989.

On November 13, 1989, the court issued a Memorandum Opinion which concluded that "Freidus has control of the documents for the purposes of discovery under Rule 34." Pursuant to the Memorandum Opinion the court issued an order on November 17 directing Freidus "to produce all documents included in schedule A attached to plaintiff's notice of deposition dated March 29, 1989" and also to give the Government's counsel (or counsel's agents) "access to the Freidus residence to permit them to examine such documents at the Freidus residence and to remove and copy any of such documents at a facility designated by plaintiff's counsel and/or his agents."

Two days later the Government's counsel met with Mrs. Freidus' counsel at her counsel's request. The parties agreed that Mrs. Freidus would remove the documents from the residence to the offices of Mrs. Freidus' counsel. A letter from counsel for the Government to Counsel for Mrs. Freidus of December 1, 1989, apparently the embodiment of prior discussions, requests the production of documents on a rolling basis, as well as a privilege list relating to the documents describing the nature of the documents and the basis of the privilege pursuant to Local Civil Rule 46(e)(2)(ii)(A).

The next few months saw a series of letters exchanged between counsel for Mrs. Freidus and the Government. A February 1990 letter from Mrs. Freidus' counsel confirmed that Mrs. Freidus had 43 boxes of documents to produce and that counsel for Mrs. Freidus would be providing a list of those documents for which they were asserting a privilege (the "privilege list"). Beginning in February, counsel for Mrs. Freidus started to release those boxes for which Mrs. Freidus claimed no privilege.

In July and August, 1990, counsel for Mrs. Freidus provided several versions of the privilege list culminating in the delivery of the so-called final version of the list to the Government on September 7, 1990 (the "first privilege list"). The first privilege list asserted claims of privilege based on

the Fifth Amendment, attorney-client privilege, and the work product doctrine for some 1,900 documents.

On September 28, 1990 the Government filed its motion to compel. On November 6, 1990, pursuant to an agreement between counsel, counsel for Mrs. Freidus submitted a revised privilege list (the "revised privilege list") along with some documents previously withheld. The revised privilege list narrowed the discovery dispute to 900 documents and relinquished all claims of privilege based solely on the work product doctrine.[1]

The facts relating to the agreement resulting in the submission of the revised privilege list (and its reduction of the number of documents still at issue) are disputed by the parties. Mrs. Freidus' counsel states that he submitted the revised privilege list (with its more detailed description of the nature of the documents) in reliance on counsel for the Government's assurance that no waiver of privilege would result from the additional disclosure. The Government's counsel maintains that there was no such agreement.

On November 21, 1990, counsel for the parties attended a preliminary conference with the court on the motion to compel. Oral argument was heard on December 7, 1990, and the motion was considered submitted as of that day.

*Discussion*

The instant motion raises the issue of whether the Fifth Amendment protects Mrs. Freidus from even the act of production. If the answer to that question is no, then the court will consider whether Mrs. Freidus may nevertheless assert a claim of privilege based on the contents of the documents.

A. Production of the Documents: The Extent of the Fifth Amendment's Protection

The Fifth Amendment to the Constitution of the United States provides, in rele-

vant part, that: "no person ... shall be compelled in any criminal case to be a witness against *himself....*" (emphasis added). The relevance of the Fifth Amendment's protection to the instant motion, involving as it does the subpoena of documents from a third-party witness as opposed to a party to the underlying action, lies in the possibility that, based on the information obtained from the document production, Mrs. Freidus could herself be named a defendant in a government action.

1. *Scope of Privilege*

The Supreme Court has considered the application of the Fifth Amendment to document production on several occasions. *See, e.g., United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). *Fisher* provides the starting point for the more recent analysis in this area of the law. In an effort to rein in some of the more expansive interpretations of the Fifth Amendment unleashed by *Boyd,* the Court in *Fisher* established that the Fifth Amendment does not shield documents simply because their contents are incriminating.

In *Fisher,* an accountant and a lawyer faced with Internal Revenue Service summonses of documents relating to clients' tax returns asserted a claim of privilege on the grounds that the documents might incriminate the taxpayer/client. The Court rejected the claim of privilege where the taxpayers themselves could not assert such privilege, stating that, "the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by *his own compelled testimo-*

---

**1.** While the revised privilege list asserted some claims of attorney-client privilege, Mrs. Freidus in her brief states that the dispute over attorney client privilege has been solved and that "the sole issue to be resolved by this Court is the assertion by Mrs. Freidus of a Fifth Amendment Privilege." Defendant's Brief at 2. Accordingly, the court will only consider Mrs. Freidus' Fifth Amendment claims.

*nial communication." Fisher,* 425 U.S. at 409, 96 S.Ct. at 1580.

After fixing the Fifth Amendment privilege firmly to its moorings as a "protection against compelled self-incrimination, not [the disclosure of] private information," 425 U.S. at 401, 96 S.Ct. at 1576 (citation omitted), the Court went on to prescribe the conditions under which the Fifth Amendment protects the production of documents. The Fifth Amendment shields production of documents if the act of *producing* them constitutes tacit testimony concerning: (1) "the existence of papers demanded," (2) "their possession or control by the [witness]," or (3) "the [witness'] belief that the papers are those described in the subpoena." *Fisher,* 425 U.S. at 410, 96 S.Ct. at 1581. Thus, *Fisher* stands for the proposition that even when "the contents of a document may not be privileged, the act of producing the document may be." *Doe,* 465 U.S. 605, 612–13, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984).

### 2. *Production as Self-Incrimination*

The Fifth Amendment does not protect production of documents when "[t]he existence and production of the papers are a foregone conclusion and the [witness] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581.

In the instant case, the question becomes whether the Government has an existing knowledge of the documents, either from the deposition of Mr. Freidus or other sources, such that Mrs. Freidus' production of the documents would add little to the Government's existing information, and therefore would have no significant testimonial impact.

#### a) Privilege List Does Not Constitute Waiver of Fifth Amendment Claim

Some of the Government's already existing knowledge of the documents, of course, arises from the rudimentary information about the contents of the documents contained in the privilege list. The information derived from the privilege list can only be deemed part of the Government's existing knowledge for *Fisher* purposes if the submission of the information contained in the privilege list constitutes a waiver of Fifth Amendment privilege. Under the circumstances surrounding the instant motion, the submission of a privilege list does not constitute a waiver.

The instant motion arises in a procedural posture different from other cases in which a witness subject to a subpoena makes a Fifth Amendment claim. In most cases, the witness asserts a Fifth Amendment privilege in a motion to quash, pursuant to Fed.R.Civ.P. 45(b) (witness may move to quash subpoena if "unreasonable and oppressive"), or by means of a motion for a protective order pursuant to Fed.R.Civ.P. 26(c)(1). *See, e.g., SEC v. First Jersey Securities, Inc.,* 843 F.2d 74, 75 (2d Cir. 1988) (witness moved for protective order); *United States v. Friedman,* 638 F.Supp. 816 (S.D.N.Y.1986) (witness moved to quash); *Segmond v. United States,* 589 F.Supp. 568, 570 (S.D.N.Y.1984) (taxpayer motion to quash).

In the instant case, the witness has asserted her Fifth Amendment privilege in response to the Government's motion to compel, but after the parties agreed on a schedule for the production of the documents. The parties agreed on the production schedule after Mrs. Freidus' counsel notified the Government that Mrs. Freidus would be claiming a Fifth Amendment privilege with respect to some of the documents, and that counsel for Mrs. Freidus would produce the documents pending their review for such privilege. The letter of December 1, 1989 reflects this agreement about document production and claims of privilege.

The facts presented in the instant motion are therefore similar to those in *United States v. O'Henry's Film Works, Inc.,* 598 F.2d 313 (2d Cir.1979), cited by Mrs. Freidus in her brief. In *O'Henry's Film Works,* the question before the court was whether a witness' testimony that he did not possess the documents sought in a government subpoena constituted a waiver of his Fifth Amendment rights. The Sec-

ond Circuit held that there was no such waiver. The limited contact between counsel for Mrs. Freidus and the Government in reaching agreement about the production of documents and in staking out the extent of the Fifth Amendment privilege to be claimed by Mrs. Freidus is similar to the narrow scope of the testimony offered by the witness in *O'Henry's Film Works* and therefore does not constitute a waiver of the Fifth Amendment privilege, far beyond denying her possession of the documents.

b) The Government's Independent Knowledge as to the Existence, Possession, and Authenticity of the Documents

█ Given that there was no waiver and therefore that the Government is not entitled to rely on the more specific knowledge of the contents of the documents gained from the submission of the privileged lists, the Government, nevertheless, has knowledge of the existence of the documents, their possession by Mrs. Freidus, and their authenticity sufficient to preclude Mrs. Freidus from incriminating herself by the act of production.

The Government points to its two hour deposition of Freidus as grounds for holding that the Government already has enough knowledge about the documents such that Mrs. Freidus' production of such documents would not be tantamount to self-incrimination. In his deposition of August 31, 1989, Freidus testified in great detail to the existence of files related to prospectuses for the purchase of land, art, securities, bank accounts and mortgages. He testified with respect to specific transactions. Mrs. Freidus' production of the documents, then, would not be self-incriminatory given the depth of the government's knowledge of the documents' existence. *See In re Grand Jury Subpoenas Issued to Thirteen Corps.*, 775 F.2d 43, 48 (2d Cir.), *cert. den., Roe v. United States*, 475 U.S. 1081, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1985) ("*Roe*") ("if one of [the witness'] relatives or associates complies with the subpoena, any information obtained from

[the witness] would not have been extracted under an order compelling him to testify").

The extent of the Government's knowledge as to the existence of the documents is to be distinguished from its imputed knowledge in *United States v. Fox*, 721 F.2d 32 (2d Cir.1983). In *Fox*, the Second Circuit held that the Government did not have knowledge of the existence of the documents sought pursuant to subpoena sufficient to overcome the likelihood that the witness would incriminate himself by production where the scope of the subpoena was overbroad (all books and records of taxpayers for the tax years in question) and where the Government had no knowledge of the existence of any records other than what could be inferred from the tax returns.

In the instant motion, the extent of the Government's knowledge of the existence of the documents is more akin to the government's knowledge of the existence of subpoenaed documents in *SEC v. First Jersey Securities*, 843 F.2d 74 (2d Cir. 1988). In *First Jersey*, the Government as part of an SEC civil proceeding sought documents from an officer of a corporation. Citing *Fisher*, the Second Circuit held that the officer could not claim a *personal* Fifth Amendment privilege [2] that protected him from producing the documents. The opinion further stated that the testimonial impact on the officer of producing the documents would be "negligible" where, among other things, the Government's knowledge of the documents' existence was based on managers of other branches of the corporation having produced of papers in the same "categories of documents requested by the SEC." *First Jersey* at 76.

In the instant case, as in *First Jersey*, the Government has knowledge of the general types of documents it is seeking. The court in *First Jersey*, moreover, imputed the Government with the requisite knowledge where "everybody knew the documents existed" and where the documents

---

**2.** The opinion noted that the officer could not assert such a privilege on behalf of the corporation where a corporate entity has no such privilege against self-incrimination. *First Jersey* at 76.

were of the type normally generated in the course of business. *Id.* As stated above, the Government's discussions with Mr. and Mrs. Freidus in which Mr. and Mrs. Freidus acknowledged the existence of the documents and its general knowledge of the existence of certain types of financial records provide a basis of knowledge similar to that in *First Jersey.*

Mrs. Freidus' production of the documents would add nothing to the Government's knowledge of who controls the documents, the second criterion for production to constitute self-incrimination under *Fisher.* As stated above, the Government already has knowledge of Mrs. Freidus' control of the documents, both through the testimony of Mr. Freidus, who never asserted any Fifth Amendment privilege, and through the admission of Mrs. Freidus herself through counsel at the time of the first contact with the Government. This admission of control precedes and is therefore independent of the information contained in the privilege list.

Even assuming that the Government has no independent knowledge of Mrs. Freidus' control of the documents, there is nothing incriminating in Mrs. Freidus' admission that she controls the documents. *Fisher* requires courts faced with a Fifth Amendment claim in the context of document production to distinguish between cases in which the contents of documents may be incriminating, and cases in which the very act of production incriminates. Here, whatever, the contents of the documents, Mrs. Freidus' possession—the fact that she is the keeper of the file cabinets—is not in itself incriminating.

A comparison of the instant case with *In re Grand Jury Subpoenas Duces Tecum dated June 13, 1983 and June 22, 1983,* 722 F.2d 981, 984 (2d Cir.1983) ("*Saxon*") comports with this result. In *Saxon,* the target of the government subpoena, a former executive of the Saxon corporation, had wrongfully misappropriated the documents from the company. The Second Circuit held that the executive had a colorable Fifth Amendment claim where the act of absconding with the documents would be tantamount to a tacit admission of knowledge of their incriminating contents and remanded to the district court to determine the scope of such claim. *Saxon,* 722 F.2d at 987. In the instant case, Mrs. Freidus makes no claim that her possession of the documents is wrongful. Indeed, her control has not only been admitted by both Mr. and Mrs. Freidus, but such control is consistent with Mr. Freidus' deposition statement that Mrs. Freidus has complete charge of the family assets. Mrs. Freidus cannot now claim that her possession of the documents, and therefore the production of such documents, will be incriminating where it is consistent with facts already admitted.

While the production of the documents would to some extent attest to Mrs. Freidus' belief that the documents she surrenders are in fact those the government seeks, there are other means of authenticating the documents wholly apart from Mrs. Freidus' production. First, for many of the documents, such as public records, letters written by others including Freidus, and bills, Mrs. Freidus is not competent to provide authentication as the documents are not of her creation. *See Fisher,* 425 U.S. at 413, 96 S.Ct. at 1582 (no testimonial significance where taxpayer not competent to authenticate documents prepared by taxpayer's accountant). Second, virtually all of the documents can be authenticated through the testimony of Freidus. In his deposition, Freidus stated that he acted as his wife's financial advisor, and that he is familiar with his wife's finances. Therefore, production does not provide independent testimonial significance to the authenticity of the documents. *See First Jersey,* 843 F.2d at 76 (no testimonial significance where "there are various means available to authenticate the documents wholly apart from the fact that [the witness] produced them").

In sum, despite the fact that Mrs. Freidus did not waive her Fifth Amendment rights by the submission of the privilege lists, the Government has independent knowledge of the existence of, the possession of, and the authenticity of the documents that are the subject of this motion

independent of and apart from the information contained in the privilege list. Given the state of this pre-existing knowledge, the act of production would not incriminate Mrs. Freidus, and consequently, she cannot assert a Fifth Amendment privilege protecting her from having to respond to the Government's request for production of the documents.

### 3. Contents–Based Privilege

The lack of a production-based Fifth Amendment privilege does not, however, preclude the possibility of a contents-based privilege. Beginning with *Boyd*, the Supreme Court has long viewed the contents of documents sought pursuant to a subpoena as determinative of whether the Fifth Amendment protects against such compelled production. While subsequent decisions have chipped away at the Fifth Amendment's protection of business records,[3] *Boyd*'s protection on Fifth Amendment grounds of personal documents—the contents-based test for Fifth Amendment protection—remains good law despite the alternate line of analysis developed in *Fisher*. *See Braswell v. United States*, 487 U.S. 99, 102, 108, 108 S.Ct. 2284, 2286, 2290, 101 L.Ed.2d 98 (1988) (refusing to apply *Fisher* analysis and noting that contents-based rule not rendered obsolete); *Saxon*, 722 F.2d at 986 (noting that executive might be able to claim a Fifth Amendment Privilege for personal notes on corporate documents after leaving the corporation's employ); *In re Grand Jury Subpoena Duces Tecum*, 741 F.Supp. 1059, 1068 (S.D.N.Y.1990) ("*Rose*") ("*Boyd*'s holding with respect to private papers should be preserved").

In *Rose*, this court held that the defendant's voluntarily created personal papers such as personal diaries, appointment books, and private non-business tape recordings would be protected by the Fifth Amendment from government subpoena. In the instant case, certain of the documents described on the privileged list may fall into this category. Such category would include any personal, non-business papers written by Mrs. Freidus that were created voluntarily and not as part of a government record keeping requirements.

The category of documents for which there is an arguable claim of privilege under *Rose* is therefore limited to the following[4]: the memos referred to on page 6 if written voluntarily by Mrs. Freidus; the Picasso memos on page 9, if they meet the above conditions; memos on page 15, 16, 17, 19, 21; on page 53, Mrs. Freidus' list of her personal property/antique jewelry; on page 63, the letter from Mrs. Freidus to the IRS; the Freidus family personal notes/letters pictures on page 66; the memo on the sale of Freidus assets on page 70, if authored by Mrs. Freidus; on page 73, the list of Mrs. Freidus' credit card accounts, if prepared by her; the miscellaneous letters and memos described on page 86; the memo on "unusual real estate investments" on page 93, if written by Mrs. Freidus; the memos on page 96, 97, 100, 102, 103, 108, 109 and 110, if written by Mrs. Freidus; Mrs. Freidus' letter to the IRS on page 110; the memos on p. 116, as well as the statement of Mrs. Freidus' personal assets, if written by Mrs. Freidus; the memo on page 117; Mrs. Freidus' statements of personal assets on page 117; on page 124, Mrs. Freidus' Diners Club card application as well as correspondence from her related to personal credit card accounts; the memos listed on pages 127–128, as well as the list of property holdings on those pages; the memo on page 130; the list of Mrs. Freidus' credit cards on p. 131; the two memos listed on page 132; Mrs. Freidus' financial statement on page 133–35 (but not those statements compiled by accountants); Mrs. Freidus' statement of her financial condition on page 136; the

---

**3.** *See United States v. Doe*, 465 U.S. 605, 612, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984) ("[w]here the preparation of business records is voluntary, no compulsion is present"); *Andersen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (seizure of business records voluntarily prepared did not compel defendant to be a witness against himself).

**4.** The list of documents for *in camera* review includes the following documents to the extent they have not been produced already pursuant to the revised privilege list.

memos described on page 137–43; the memo listed on page 147; the memo regarding taxes on page 142; on page 159, any personal memos regarding the sale of the Riverhead property; and on page 193, any correspondence from Mrs. Freidus on "litigation preparation."

This set of privileged documents does not include, of course, business records voluntarily kept, as well as such documents as Mr. Freidus might claim are personal to him. *See United States v. Doe*, 465 U.S. 605, 612, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984) ("Where the preparation of business records is voluntary, no compulsion is present."); *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973) (Fifth Amendment claim adheres only to person asserting it).

With the above listed documents, the court will determine the existence of a contents-based Fifth Amendment privilege based by means of an *in camera* review of any documents challenged by the Government as not within the scope of this opinion. *See Estate of Fisher v. Comm'r*, 905 F.2d 645, 650 (2d Cir.1990); *In re Katz*, 623 F.2d 122, 126–27 (2d Cir.1980); *In re Grand Jury Subpoena Duces Tecum*, 741 F.Supp. at 1072.

**B. Costs and Attorney's Fees**

The Government has moved for costs and attorney's fees pursuant to Rule 37(a)(4), Fed.R.Civ.P. Rule 37(a)(4) provides that such fees may be awarded to the moving party if the motion is granted and the court finds that opposition to the motion was not "substantially justified" or that there are no other circumstances making the shifting of the expenses unjust.

The imposition of sanctions under Rule 37(a)(4) is governed by a clear abuse of discretion standard. *New York State NOW v. Terry*, 886 F.2d 1339, 1354 (2d Cir.1989) (citations omitted). Where the resolution of the instant motion found some merit in Mrs. Freidus' assertion of privilege, Mrs. Freidus' opposition to the motion falls short of the abuse of discretion standard.

*Conclusion*

For the reasons set forth above, the Government's motion is granted, except for those privilege list documents specified in Part A.3 of the opinion above (the "reserved documents"). Those documents will not be produced unless the exercise of the privilege is challenged by the Government, in which instance the documents will be submitted for *in camera* review. The Government's motion for attorney's fees and costs is denied.

It is so ordered.