George DAY, Plaintiff,

v.

**BOSTON EDISON COMPANY,**
**Defendant.**

Civ.A. No. 90–10425–S.

United States District Court,
D. Massachusetts.

July 23, 1993.

George Day, pro se.

Karin A. Gregory, George C. Deptula, Gaffin & Krattenmaker, P.C., Boston, MA, for George Day and James F. Powers, Jr.

Karin A. Gregory, George C. Deptula, Gaffin & Krattenmaker, P.C., Boston, MA, James F. Powers, Milton, MA, Gerard J. Powers, O'Neil, DiCicco, Sahagian & Powers, Boston, MA, for Helen I. Reber and Annette E. Dietel.

Anna M. Stathis, Lisa Sirkin, E.E.O.C., New York City, for E.E.O.C.

Robert P. Morris, James M. Paulson, Robert P. Morris, Keith H. McCown, Morgan, Brown & Joy, Boston, MA, for Boston Edison Co.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO COMPEL AND FOR SANCTIONS (# 17)

COLLINGS, United States Magistrate Judge.

### I.  INTRODUCTION

Defendant's motion to compel presents rather complicated questions with respect to the extent to which a plaintiff in a civil action can invoke his privilege against self-incrimination in order to resist relevant discovery. In the instant case, the discovery sought is production of a tape recording of an interview plaintiff had with two of the defendant's employees on March 24, 1988. Neither of the defendant's employees knew that plaintiff was recording the meeting. The act of recording the meeting without the consent of the participants is a crime under Massachusetts law.

### II.  THE FACTS

In February, 1990, plaintiff George Day filed the instant suit alleging that his employer, Boston Edison Company, discriminated against him on account of age in eliminating his position with the company in March, 1988. After his position was eliminated, plaintiff applied for other positions within Boston Edison. On March 24, 1988, in connection with his application for the position of Commercial Billing Coordinator, he was interviewed by two Boston Edison employees, Mr. McGrath and Mr. Ellis. Defendant avers that plaintiff was subsequently offered the position but did not accept by the deadline for acceptance set by the company. In his Complaint, Etc. (# 1), plaintiff makes explicit reference to the March 24, 1988 meeting in paragraph 8 as follows:

> Among the positions applied for by the Plaintiff was that of Commercial Billing Coordinator. The Plaintiff was interviewed by the Defendant, through its agents, servants and/or employees on or about March 24, 1988.

After suit was filed, defendant served a request for production of documents pursuant to Rule 34, Fed.R.Civ.P., in or about August, 1990. In the request, the term "document" was defined to include "written, recorded, transcribed, filmed or graphic matter." In Request # 8 of its Request for Production of Documents, defendant sought:

> Each document that in any way substantiates, evidences or refers or relates to the incidents described in paragraph 8 of the complaint.

Day's response was:

> See answer to interrogatories 7, 8, 11, 12, 16, 18, and 19.

Plaintiff's response was totally improper. Rule 34(b), Fed.R.Civ.P., provides, in pertinent part, that:

> The response [to a request for production of documents] shall state, with respect to each item or category, that inspection ... will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated. If objection is made to a part of an item or category, the part shall be specified.

> \*　　\*　　\*　　\*　　\*　　\*

> A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond to the categories in the request.

Plaintiff's response is, in essence, no response at all. In light of what has since transpired, it is interesting to note that in answer to interrogatory # 18, plaintiff gives a rather lengthy account of what occurred at the March 24, 1988 meeting.

In Request # 13 of its Request for Production of Documents, defendant sought:

> Each document you provided to the Massachusetts Commission Against Discrimination or the Equal Employment Opportunity Commission in relation to the charge you filed with those agencies, and each document either agency has provided to you.

Plaintiff's response was:

> Letter to all managers and supervisors from Bernard W. Reznicek dated March 4, 1988, letter to me from Bernard W. Reznicek dated March 4, 1988, letter to me from Warren F. Roche dated March 7, 1988 and Office Manager to Organization Heads and

Department Heads from R.L. Van Stry dated March 21, 1988 (see copies enclosed.)

The Equal Employment Opportunity Commission (hereinafter, "EEOC") also filed suit against the defendant.[1] In May, 1991, defendant served a request for production of documents on the EEOC which included a request for copies of "all documents provided [to the EEOC] by George Day" and "all documents in [the EEOC's] investigative files in ... George Day v. Boston Edison Company, EEOC No. 1618900983." The EEOC responded in July, 1991. Included within the group of documents produced by the EEOC was a purported transcript of the interview which plaintiff had with Messrs. McGrath and Ellis on March 24, 1988. *See* Exhibit 1 to # 18.

Meanwhile, on June 11, 1991, plaintiff's attorney, Karin Gregory, Esquire,[2] deposed Mr. McGrath. Attorney Gregory asked Mr. McGrath numerous questions about the interview, including the question: "If there were a recording of this interview, would you change your testimony at all, sir?" Mr. McGrath answered: "I wouldn't change my testimony." At the time of this deposition, defendant's counsel had no knowledge of any tape recording since the transcript was not received until the EEOC produced documents a month later in July, 1991.

There is no dispute that if plaintiff did record the interview without the consent of Mr. McGrath and Mr. Ellis, he would have violated a criminal statute, i.e., M.G.L.A. Chapter 272, §§ 99(C)(1) and (C)(3)(b), which prohibits the recording of oral communications within the Commonwealth without consent of the participants.[3]

### III. INITIAL FINDINGS

The facts which I have just recited do not seem to be disputed. On the basis of them, I find that any tape recording and/or transcript of the March 24, 1988 interview fell within the documents and objects requested by defendant. I further find that if plaintiff made such a tape recording and transcript, he withheld relevant documents and objects in the form of such tape recording and transcript of the March 24, 1988 interview at the time he responded to defendant's request. I find that no objection was interposed to production at the time the response was served; rather, no reference whatsoever was made to the documents. Lastly, I find that plaintiff's attorney appears to have made use of the withheld documents to depose Mr. McGrath in June, 1991.

### IV. THE POSITIONS OF THE PARTIES

Defendant now moves to compel production of the tape recording which Day made of the interview on March 28, 1988 as well as any and all tape recordings and/or transcripts not previously produced which come within its document request. *See* # 17. Plaintiff opposes the motion on the following grounds:

Mr. Day contends that he has a Fifth Amendment right not to incriminate himself and produce any such alleged tape recording and transcript thereof, even if he has the same or undertook the alleged actions, particularly in view of Boston Edison's vigorous allegations that his conduct was criminal. Mr. Day further contends that any invocation of Fifth Amendment rights in conjunction with Boston Edison's efforts cannot constitutionally subject him to sanctions.

*See* # 20, p. 6.

---

1. *Equal Employment Opportunity Commission v. Boston Edison Company*, C.A. 91–10312–S; this case has been consolidated with the *Day* case and the cases of three other individual plaintiffs who have sued Boston Edison. *See* # 15 in the *Day* case.

2. Plaintiff was originally represented by attorney James F. Powers, Jr., who signed the "response" to the document request on behalf of Day. In late 1990, Day retained George Deptula, Esquire, to represent him. Karin Gregory, Esquire, is an associate of Mr. Deptula.

3. The six-year statute of limitations has not yet run.

**20**

## V. DISCUSSION

Defendant makes two arguments in support of waiver.[4]  The first is that by submitting a "transcript" of conversations at the meeting to the EEOC, plaintiff waived the privilege as to the conversations recorded on the tape.  The second is that by failing to assert the privilege in response to the request for production of documents, the plaintiff waived the privilege.  These two arguments will be discussed in turn.

### A.  Has Privilege Been Waived By Submitting the "Transcript" to the EEOC?

■  I have no difficulty in ruling that by producing the "transcript" of conversations at the meeting to the EEOC, the plaintiff waived the privilege as to the content of the discussions.  However, plaintiff is not claiming any privilege as to the content of the discussions; so far as appears, nothing which he said at the meeting incriminates him in any criminal activity.  Rather, what plaintiff is claiming is, if he produced a tape recording of the meeting, the act of production would incriminate him in that it would be evidence that he violated the Massachusetts criminal statute prohibiting tape recording of conversations without the consent of all concerned.

The Supreme Court has acknowledged that:

> The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced.  Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer.

*Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976).  The holding was reaffirmed in *United States v. Doe,* 465 U.S. 605, 612, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984).  This does not mean that every act of production is incriminatory.  In the *Fisher* case, the Court noted that on the facts of that case:

4.  There is no contention that the privilege is not applicable because this is a civil rather than a criminal case or because the Government is not a party.  *See Stop & Shop Companies v. Interstate Cigar Co.,* 110 F.R.D. 105, 107 (D.Mass., 1986).  The First Circuit has noted that: "... although the Constitution couches [the] privilege [against self-incrimination] in terms of criminal cases, it

It is doubtful that implicitly admitting the existence and possession of the papers rises to the level of testimony within the protection of the Fifth Amendment.

\*    \*    \*    \*    \*    \*

> The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers.  Under these circumstances by enforcement of the summons "no constitutional rights are touched.  The question is not of testimony but of surrender." *In re Harris,* 221 U.S. 274, 279 [31 S.Ct. 557, 558, 55 L.Ed. 732] (1911).

*Fisher v. United States, supra,* 425 U.S. at 411, 96 S.Ct. at 1581.  *See also United States v. Freidus,* 135 F.R.D. 52, 56–59 (S.D.N.Y., 1991).

In *United States v. Doe, supra,* 465 U.S. 605, 104 S.Ct. 1237, the Supreme Court, although holding that private papers and papers of a sole proprietorship are not privileged, refused to overturn the rulings of the lower courts that the act of production would involve "testimonial self-incrimination." *Id.* at 613, 104 S.Ct. at 1242.  The Supreme Court quoted the Court of Appeals on this point:

> ... [W]e find nothing in the record that would indicate that the United States knows, as a certainty, that each of the myriad documents demanded by the five subpoenas in fact is in the appellee's possession or subject to his control.  The most plausible inference to be drawn from the broad-sweeping subpoenas is that the Government, unable to prove that the subpoenaed documents exist—or that the appellee even is somehow connected to the business entities under investigation—is attempting to compensate for its lack of knowledge by requiring the appellee to become, in effect, the primary informant against himself.

is now beyond question that the right of a witness not to give incriminating answers applies with equal force to any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory, whenever the answer to a question put to a witness might tend to subject him to criminal responsibility." *In re Kave,* 760 F.2d 343, 353-4 (1 Cir., 1985) (citations omitted).

*Id.* at 613–614, n. 12, 104 S.Ct. at 1243, n. 12 quoting from *In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 335 (3rd Cir. 1982) (footnote omitted).

The First Circuit made a similar finding in the case of *In re Kave, supra,* 760 F.2d 343, noting that production of records in that case would be "the legal equivalent of identifying and authenticating evidence" of "conduct" which is evidence of "delictual activity" and would constitute an admission that certain records were "possessed" and "received," admissions which "could constitute an incriminatory testimonial act." *Id.* at 358. *See also In re Grand Jury Proceedings United States,* 626 F.2d 1051, 1055–56 (1 Cir., 1980).

On papers in the instant case, it can easily been seen that the act of producing the tape, purportedly made in violation of a criminal statute, would incriminate the plaintiff. The existence of the tape is not a foregone conclusion. Plaintiff has never admitted making a tape of the meeting. The defendant strongly suspects the existence of the tape because of the "transcript" submitted to the EEOC, but the act of producing the tape would be evidence of conduct, i.e., illegally making the tape, and would constitute an admission that the tape exists.

In sum, I find that the production of the "transcript" is not a waiver of the plaintiff's right not to incriminate himself by the act of producing the tape in response to the request.

B. Has Privilege Been Waived By Not Invoking the Privilege in Response to the Request for Production?

■ Defendant's second argument is that the plaintiff waived the privilege by not asserting it in response to the defendant's document request. Of course, the usual rule is that failing to serve objections to requests for documents within the time period prescribed by Rule 34(b), Fed.R.Civ.P., operates as a waiver of the objections to production. *Krewson v. City of Quincy,* 120 F.R.D. 6, 7 (D.Mass., 1988). However, objections to production based on the privilege against self-incrimination seem to be an exception to the usual rule.

■ There is no question but that the privilege against self-incrimination can be waived, not only explicitly but also implicitly by failing to assert it. Thus if a witness who is compelled to testify, does, in fact, testify and during testimony reveals information instead of claiming the privilege, the witness can be said to have waived the privilege as to the information disclosed. *Garner v. United States,* 424 U.S. 648, 653, 96 S.Ct. 1178, 1181, 47 L.Ed.2d 370 (1976) citing *United States v. Kordel,* 397 U.S. 1, 7–10, 90 S.Ct. 763, 766–68, 25 L.Ed.2d 1 (1970). As the Second Circuit has noted:

> There is no doubt that a waiver of the fifth amendment's privilege against self-incrimination may, in an appropriate case, be inferred from a witness' prior statements with respect to the subject matter of the case, without any inquiry into whether the witness, when he made the statements, actually knew of the existence of the privilege and consciously chose to waive it.

*Klein v. Harris,* 667 F.2d 274, 287 (2 Cir., 1981) (citation omitted).

However, the Court went on to note that in that context:

> ... [S]uch a "testimonial waiver" is not to be lightly inferred, *see Smith v. United States,* 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949), and the courts accordingly indulge every reasonable presumption against finding a testimonial waiver, *see Emspak v. United States,* 349 U.S. 190, 198, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955); *United States v. O'Henry's Filmworks, Inc.,* 598 F.2d 313, 318–9 (2d Cir.1979). Indeed, we read the prior decisions of the Supreme Court and the courts of this Circuit to hold that a court should only infer a waiver of the fifth amendment's privilege against self-incrimination from a witness' prior statements if (1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiv-

er of his fifth amendment's privilege against self-incrimination.

*Klein v. Harris, supra*, 667 F.2d at 287. As can be seen, the cases just cited concern the question of in what circumstances a witness may be said to have waived the privilege because of having made prior statements on the same subject matter without claiming the privilege at the earlier time. Thus, they are not directly on point to the situation at bar in which the incrimination comes not from what is on the tape but from the act of its production. However, courts have cited the language from the *Smith* case that a waiver of the privilege is not to be "lightly inferred" [5] to hold that a failure to object to a request for production or a subpoena on grounds of the privilege against self-incrimination does not necessarily preclude assertion of the privilege at a later time. *See In re Kave, supra*, 760 F.2d at 353, n. 22; *Brock v. Gerace*, 110 F.R.D. 58, 63 (D.N.J., 1986).

■ Whether or not a failure to invoke the privilege at an earlier time will be considered a waiver depends on the facts of the individual case. The failure to assert the privilege earlier was not fatal in the case of *In re Kave, supra*, because it did not "occasion[ ] undue delay." *In re Kave, supra*, 760 F.2d at 353, n. 22. *See also Godsey v. United States*, 133 F.R.D. 111, 113 (S.D.Miss., 1990) (discovery of "otherwise patently improper" material because privileged will not be compelled even if no timely objection or timely claim of privilege). Similarly, the failure to interpose the privilege in response to interrogatories and requests for production was not fatal in the case of *Brock v. Gerace, supra*, 110 F.R.D. 58. In that case, the defendant failed to answer interrogatories or respond to document requests and plaintiff filed a motion for sanctions. *Id.* at 60. The Court ordered the defendant to serve answers to the interrogatories and a response to the document requests. The responses did not contain an assertion of the privilege but a refusal to answer on other grounds. However, in a letter sent to plaintiff's counsel one day before the responses were served, defendant's attorney invoked the Fifth Amendment privilege in declining to provide any interrogatory answers or to produce any documents. *Brock v. Gerace, supra*, 110 F.R.D. at 60. The magistrate judge in that case declined to find a waiver, indicating that if the privilege had been properly invoked in the responses to discovery, "... the Fifth Amendment dispute would have ripened a few months sooner, at most." *Id.* He wrote:

Defendant was not guilty of the procedural gamesmanship and dilatory tactics that would require a finding of loss of his constitutional protection against self-incrimination, *cf. United States v. Cioffi*, 493 F.2d 1111, 1119 (2d Cir.), *cert. denied*, 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974) nor has this protection been invoked as an afterthought, *cf. Rogers v. United States, supra*, 340 U.S. at 371, 71 S.Ct. at 441.

*Id.* at 64.

■ Thus, the next question is whether the plaintiff has been "guilty of procedural gamesmanship and dilatory tactics that would require a finding of loss of his constitutional protection against self-incrimination." *Id.* Upon a review of the file, I do find that the plaintiff was guilty of some "procedural gamesmanship and dilatory tactics" in connection with his responses to discovery; whether they were severe enough to warrant a finding of waiver is another question.

■ In Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel, Etc. (# 20), plaintiff's present counsel writes:

Mr. Day's original counsel, Mr. Powers, took the position that any such alleged tape recording or transcript had no evidentiary value or relationship to this case and that Mr. Day had Fifth Amendment rights not to divulge any information about any alleged tape. A purported transcript was first produced or relied upon in this case when Boston Edison itself produced such a transcript in support of its motion.

# 20 at pp. 6–7.

This is an extraordinary statement and evidences both "procedural gamesmanship and dilatory tactics." In the first clause of the first sentence, plaintiff is taking the position

---

**5.** *Smith v. United States, supra*, 337 U.S. at 150, 69 S.Ct. at 1007.

that although plainly within the "documents" (defined to include "recorded matter") requested in paragraph 8 of the defendant's request,[6] plaintiff's counsel, without in any way saying so in his response, unilaterally determined that the tape recording need not be produced because it "had no evidentiary value." In the second clause, he justifies not mentioning anything in his response because plaintiff "had Fifth Amendment rights not to divulge any information about any alleged tape." This is preposterous. If a document or object falls within a document request, it must be produced unless an objection based on relevance or privilege or some other ground is asserted in the response. Counsel cannot decide that a requested document or object, although within the four corners of a request, need not be produced and not communicate the fact that it is not being produced in the response to the request.

The claim that the tape "had no evidentiary value" is absurd. Presumably the tape recording is of a meeting between plaintiff and defendant's agents which is specifically referenced in paragraph 8 of his Complaint (# 1). Whether or not a document or object is "relevant" as that term is used in Rule 26(b)(1), Fed.R.Civ.P., is not determined by whether or not counsel for the party of whom the request is made is going to use the document or object. The argument that the Fifth Amendment privilege permits withholding of the document or object without ever advising the other party that a document is being withheld on the ground of privilege is likewise frivolous. The Supreme Court has consistently held that:

> If [a person] desired the protection of the privilege against self-incrimination, [ ]he was required to claim it. *United States v. Monia,* 317 U.S. 424, 427 [63 S.Ct. 409, 410, 87 L.Ed. 376] (1943). The privilege "is deemed waived unless invoked." *United States v. Murdock,* 284 U.S. 141, 148 [52 S.Ct. 63, 64, 76 L.Ed. 210] (1931).

*Rogers v. United States,* 340 U.S. 367, 370–71, 71 S.Ct. 438, 440, 95 L.Ed. 344 (1951) (footnote omitted).

6. *See* p. 18, *supra.*

The "gamesmanship" seems to have continued after plaintiff retained new counsel. Current counsel avers that:

> Mr. Day and his current counsel have not utilized or obtained possession of any alleged transcript or tape recording of the interview, and any such alleged transcript or tape recording has been treated as a non-entity of no evidentiary value unrelated to the litigation at all times by Plaintiff's attorneys. Plaintiff Day believes that he can invoke his Fifth Amendment rights without threat or reprisals [sic] of sanction. Day further submits that the March 24, 1988 meeting is of critical importance of [sic] the tape and simply testimony, just as Mr. Day's answers to interrogatories, must be advance [sic] without reference to or use of any alleged "illegal recording", if one exists.

# 20, p. 8–9.

Several points need to be made. First, if the meeting is "of critical importance," it is difficult to fathom how plaintiff's attorney can say that a tape recording of the meeting is "of no evidentiary value." Second, the fact that plaintiff's counsel deems it of "no evidentiary value" to him does not mean it is of no evidentiary value to defendant. Third, the statement that present counsel has not "utilized" the tape recording appears disingenuous, to say the least. Defendant sets forth the following colloquy from plaintiff's current counsel's deposition of Mr. McGrath, one of the defendant's agents with whom plaintiff met on March 24, 1988, relating to that meeting:

> Q. If there was a recording of this interview, would you change [y]our testimony at all, sir?
>
> A. I wouldn't change my testimony.

# 18, p. 3.

On this record, I find that the plaintiff and his attorneys have engaged in a significant amount of "procedural gamesmanship." They have employed "dilatory tactics." If the privilege had been asserted in a timely manner, defendant would have known that some material was being withheld on Fifth Amendment grounds when the response to

the request for production of documents was due to be filed in September, 1990.[7] It was a year later, in September, 1991, when the EEOC produced to the defendant the "transcript" which plaintiff had forwarded to the EEOC, and it was only in response to the instant motion for sanctions (#20, filed 1/21/92) that plaintiff asserted a Fifth Amendment privilege against producing an "alleged" tape recording.

Thus, the "tactics" employed by plaintiff's attorneys were clearly "dilatory." As a result, there was a delay of sixteen months from the time when the privilege should have been asserted (September, 1990) to the date it was first asserted (January, 1992). This delay is to be contrasted with the situations in which a delayed assertion of the privilege against self-incrimination has been excused. As previously noted,[8] in the case of *Brock v. Gerace, supra,* 110 F.R.D. 58, although the privilege was not contained in the response to the request for production, it had been claimed the day before in a separate letter to opposing counsel. The Court noted that "[t]imely notice at least was informally given." *Id.* at 64. No timely notice, informal or otherwise, was given in the instant case.

In the case of *In re Kave, supra,* 760 F.2d 343, a special master was appointed to determine whether a consent decree was being violated. *Id.* at 347. A subpoena was issued to Kave, a former attorney for the party allegedly violating the decree; she moved to quash on attorney-client and work-product grounds. *Id.* at 348. The Fifth Amendment privilege was not invoked. Although the First Circuit's opinion does not reveal the dates on which the subpoena was served or the motion to quash was filed, the matter was heard by the District Judge who indicated that the issues should be raised in the first instance before the master. *Id.* On August 22nd, an initial hearing was held before the master at which time Kave stated that "[t]here are other grounds for declining to produce the documents which we can go into now or if you want to do it at the resumption of the formal hearings. I'll leave that to you." *In re Kave, supra,* 760 F.2d at 348. The master's response, if any, was not set forth in the First Circuit's opinion. At the resumption of the formal hearings on August 27, 1984, the motion to quash was denied. *Id.* at 349. After the motion was denied, but also at the same hearing on August 27th, Kave asserted the Fifth Amendment privilege against producing the documents. *Id.* It was in this context that the First Circuit wrote:

> Appellees also argued that Kave delayed too long before claiming that production of the subpoenaed documents would violate her fifth amendment privilege against self-incrimination. While the preferable course would have been for Kave to have raised the fifth amendment argument in the motion to quash, Kave did raise the matter in the hearing before the master (albeit after the motion to quash was denied) at a time when the master could have easily reconsidered his ruling without occasioning undue delay.

*Id.* at 353, n. 22.

This scenario is at sharp contrast to the instant case in which there was clearly "undue delay" caused by the plaintiff's tactics of not invoking the privilege in response to the request.

I am mindful of the admonition that a waiver of the Fifth Amendment privilege is not "lightly to be inferred," *Smith v. United States, supra,* 337 U.S. at 150, 69 S.Ct. at 1007; I do not "lightly infer" a waiver in this case. However, it is not the law that a waiver can never be inferred.[9] There is still

---

7. Thirty days after the request was served. *See* Rule 34(b), Fed.R.Civ.P. Defendant states that the request was served on or about August 3, 1990. *See* #18, p. 2.

8. *See* p. 22, *supra.*

9. I note that the statement in *Smith v. United States, supra,* 337 U.S. at 150, 69 S.Ct. at 1007 cautioning against lightly inferring a waiver dealt with a factual situation markedly different from the instant case. In that case, Smith had explicitly claimed the privilege, and the issue was whether there was a waiver based on subsequent voluntary statements. The issue in the instant case is whether a waiver is to be inferred when the privilege has not been claimed at an earlier stage of the proceedings when the plaintiff was required to respond to the request for production of documents.

some substance to the notion that to be entitled to the privilege, the privilege must be invoked. In addition, the principle stated in *Maness v. Meyers,* 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574 (1975), albeit as dictum, that the privilege against self-incrimination may be "... lost by not asserting it in a timely fashion" retains viability. *Brock v. Gerace, supra,* 110 F.R.D. at 62.

On the record before me in this case, I find that, because of the plaintiff's "procedural gamesmanship" and "dilatory tactics" which resulted in "undue delay," the plaintiff has waived the right to interpose his Fifth Amendment privilege against self-incrimination in response to the Request #8 of the defendant's request for production of documents which requested any "document," including any "written, recorded, transcribed, filed or graphic matter" which "in any way substantiates, evidences or refers or relates to the incidents described in paragraph 8 of the complaint."

### VI. CONCLUSION AND ORDER

Accordingly, plaintiff will be ordered to produce any tape recording made of the March 24, 1988 meeting/interview regardless of whether or not the tape was made in violation of a criminal statute. Any objection to production based on the privilege against self-incrimination is overruled.[10] It is ORDERED Defendant's Motion to Compel and for Sanctions (# 17) be, and the same hereby is, ALLOWED to the extent that the plaintiff is ORDERED, pursuant to Rule 37(a)(2), Fed.R.Civ.P., to produce to counsel for the

defendant, *on or before the close of business on Friday, August 13, 1993,* any and all tape recordings made of the March 24, 1988 meeting/interview between the plaintiff and defendant's agents. It is FURTHER ORDERED Defendant's Motion to Compel and for Sanctions (# 17) be, and the same hereby is, otherwise DENIED without prejudice.[11]

---

**10.** This disposition of the Fifth Amendment claim obviates the need to consider the extent to which, if at all, plaintiff can be said to have waived his Fifth Amendment privilege against producing the tape by bringing this lawsuit. *Compare Lyons v. Johnson,* 415 F.2d 540 (9 Cir., 1969), *cert. denied,* 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970) with *Campbell v. Gerrans,* 592 F.2d 1054 (9 Cir., 1979) and *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084 (5 Cir., 1979), *reh'g denied,* 611 F.2d 1026 (1980). *See also Stop & Shop Companies, Inc. v. Interstate Cigar Co., supra,* 110 F.R.D. at 108; *Johnson v. United Parcel Services, Inc.,* 127 F.R.D. 464, 465 (D.Md., 1989). The First Circuit has recognized the differing approaches, *see Greater Newburyport Clamshell Alliance v. Public Service Company of New Hampshire,* 838 F.2d 13, 17–20 (1 Cir.,

1988), in which the Court stated that "... the automatic waiver rule, in what may be termed a 'quasi-constitutional' situation is too harsh" and that the privilege should be preserved unless "fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend." *Id.* at 20.

**11.** The motion also seeks "an award of reasonable attorneys' fees, and for an order prohibiting Day from introducing evidence at trial, or at any other stage of this litigation, of the job interview he recorded." *See* # 17, p. 1. I decline to act on any request for sanctions until such time as it is determined whether and to what extent the order issued herein is obeyed.